FORST, J.
Appellants Searcy Denney Scarola Barnhart & Shipley, P.A. (“Searcy Den-ney”), et al. appeal the refusal of the guardianship court to authorize payment of $2.5 million in attorneys’ fees to the firms involved in the litigation of a medical malpractice lawsuit, the appeal, and a subsequent lobbying effort to secure a claims bill (also deemed a “private relief act”) from the Legislature on behalf of Aaron Edwards and his parents. The legislative claims bill placed a limitation on the use of funds to pay legal fees and costs, and it is this limitation that is the subject of the instant appeal. Although sympathetic to Appellants’ situation, we must disagree with their legal arguments based on separation of powers principles, supported by reasoning set forth from the Florida Supreme Court. Accordingly, we affirm the order denying Appellants’ motion for attorneys’ fees above the $100,000 granted by the Legislature in Aaron's claims bill.
I. Background
In September 1997, Aaron Edwards (“Aaron”) sustained a catastrophic brain injury during his birth as a result of negligence on the part of employees at Lee Memorial Health System. Searcy Denney, a law firm based in West Palm Beach, began its representation of Aaron and his parents in 1999. The law firm and the Edwards family entered into a standard contingency fee agreement, providing for an attorneys’ fee of 40% of any recovery if a lawsuit was filed, plus costs. The agreement also provided that “[i]n the event that one of the parties to pay my claim for damages is a governmental agency, I understand that Federal and Florida Law may limit the amount of attorney fees charged by [Searcy Denney, and i]n that event, I understand that the attorney fees owed to [Searcy Denney] shall be the amount provided by law.”
Searcy Denney represented the family in a five-week jury trial in 2007. The jury found that Lee Memorial Health System’s employees had been negligent and that their negligence had resulted in damages to Aaron and his parents. The jury awarded Aaron over $28.3 million. His mother was awarded $1,340,000 in damages, and his father was awarded $1,000,000. However, the trial court found that Lee Memorial was an independent special district of the State of Florida and, pursuant to the sovereign immunity damage limitations in section 768.28(5), Florida Statutes (2007), entered a judgment against the hospital in the amount of $200,000.[1] The trial court rulings were affirmed by the Second District Court of Appeal. Lee Mem’l Health Sys. v. Edwards, 22 So.3d 81 (Fla. 2d DCA 2009).
In an effort to obtain additional funds for Aaron and his parents, Searcy Denney submitted a claims bill to the Florida Legislature. In 2012, after a public campaign in support of the bill, the Legislature passed Claims Bill 2012-249, directing Lee Memorial to appropriate $10 million, with an additional $5 million payable in annual installments, “to the Guardianship of Aaron Edwards, to be placed in a special needs trust for the exclusive use and benefit of Aaron Edwards, a minor.” Ch. 2012-249, § 2, Laws of Fla. No monies were appropriated for the use and/or bene *351 fit of either parent for their damages. The claims bill also included a stipulation stating “[t]he total amount paid for attorney’s fees, lobbying fees, costs, and other similar expenses relating to this claim may not exceed $100,000.” Id. § 3. It is this provision that is the focus of the matter before us.
After the first $10 million installment had been paid into Aaron’s special needs trust,[2] the various trial, appellate, and lobbyist firms: that had worked on Aaron’s case — with support from the Edwards family — petitioned 'the guardianship court to approve a closing account statement transferring’ $2.& million to them. The petition premised this request on a 25% fee cap provision in section 768.28(8) and on the argument that the fees and costs limitation in the claims bill was unconstitutional. Evidence presented at the hearing on the petition showed that the firms had devoted more than 7000 hours to . representing the Edwards family at trial, on appeal, and during the claims bill process and had also incurred more than $500,000 in costs during the representation. However, the guardianship court, relying on precedent from this court and the Florida Supreme Court, found that it lacked judicial authority to grant the requested relief in contravention of the language of the claims bill regarding fees and costs.-
Appellants now appeal that denial and argue that the language in the claims bill limiting their recovery of attorneys’ fees and costs is an unconstitutional impairment of their contract with the Edwards family and should be severed from the otherwise valid private relief act for Aaron. Alternatively, Appellants contend the guardianship court had .inherent judicial discretion to. depart from the limitation imposed by ■ the Legislature and grant them reasonable fees, and costs up to the 25% limit, provided by section. 768.28(8), Florida Statutes (2Ó07).
II. A Brief History of Sovereign Immunity
The doctrine of sovereign immunity stretches back to the foundations of Anglo-American common law. Espousing the maxim that “the King can do no wrong,” Blackstone explained that “no suit or action can be brought against the King, even in civil matters, because no court can have jurisdiction over him.” 1 William BLACKSTONE; COMMENTARIES *235. HbweVer, should a subject of the Crown have “a just demand upon the King, he must petition him in his court of chancery, where his chancellor will administer right as a matter of grace, though not upon compulsion.” Id. at *236,
When the common law was exported to the American continent, sovereign immunity came with it. Although the United States Constitution does not explicitly grant the federal government immunity from suit, sovereign immunity seemingly always has applied. See U.S. v. Lee, 106 U.S. 196, 207, 1 S.Ct. 240, 27 L.Ed. 171 (1882) (“[W]hile the exemption of the United States and of the several states from being subjected as defendants to ordinary actions in the courts has ... been repeatedly asserted here, the principle has never been discussed or the reasons for it given, but it has always been treated as an established doctrine.”).
*352 Unlike the apparently, axiomatic immunity of the federal government from suits, the states initially were subjected to liability in federal courts. In Chisholm, v. Georgia, 2 U.S. (2 Dall.) 419, 1 L.Ed. 440 (1793), the United State's Supreme Court held that state governments were amenable to spit in federal courts under Article III, Section 2 of the Constitution. Soon thereafter, however, the Eleventh Amendment expanded the doctrine of sovereign immunity to protect 'state governments from suit by private citizens in federal court.' Amend. XI, U.S. Const. State sovereign immunity, protecting .the states from suit in their own courts, existed prior to the ratification of and is not derived from the Eleventh Amendment, but
is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today (either literally or by virtue of their admission into the Union upon an equal footing with the other States) except as altered by the plan of the Convention or certain constitutional Amendments.
Alden v. Maine, 527 U.S. 706, 713, 119 S.Ct. 2240, 144 L,Ed.2d 636 (1999).
After decades ’of immunity from liability, the federal government abrogated its sovereign immunity by passing the Federal Tort Claims Act in 1946. 28 U.S.C. § 1346(b); see also The Federal Tort Claims Act, 56 Yale L.J. 534 (1947). In the years that followed, the states likewise rolled back the protections of state sovereign immunity. In Florida, the state constitution stated, “Provision may be made by general law for bringing suit against the state as to all liabilities now existing or hereafter originating.” Art. X, § 13, Fla. Const. (1968). The Florida Legislature passed an experimental temporary waiver of sovereign immunity for a one year period in 1969 before finally enacting a permanent, limited waiver in 1973. Gerald T. Wetherington & Donald T. Pollock, Tort Suits Against Governmental Entities in Florida, 44 Fla. L.Rev, 1, 6 (1992). However, although 1969 saw the first general waiver of the state’s sovereign immunity, legislative relief by means of a claims bill has -been available since before statehood — the first claims bill was passed by the Legislative Council of the Territory of Florida in 1833. D, Stephen Kahn, Legislative Claim Bills: A Practical Guide to a Potential) Remedy, 62 Fla. B.J, 23 (April 1988); see also Cauley v. City of Jacksonville, 403 So.2d 379, 381 n. 5 (Fla.1981),
• Section 768.28, Florida Statutes, is the codification of the state’s limited waiver of sovereign immunity in. tort actions. A plaintiffs recovery against the state and its agencies or subdivisions is limited to no more than $200,000 per incident. § 768.28(5), Fla. Stat, (2007).[3] Moreover, in cases where a judgment exceeds $200,000, “that portion óf the judgment that exceeds these amounts may be reported to the Legislature, but may be paid in part or in whole only by further act of the Legislature.” Id, Subsection 768.28(8) of the same statute states that “[n]o attorney may charge, demand, receive, or collect, for services rendered, fees in excess of 25 percent of any judgment or settlement.”
III. The Treatment of Section 768.28(8) by Florida Courts
Shortly after the enactment of section 768.28, the Florida Supreme Court ad *353 dressed the constitutionality of the attorneys’ fees cap in a case involving the settlement of a damages claim filed against a school board. In Ingraham v. Dade County School Board, 450 So.2d 847, 849 (Fla. 1984), the court held “that section 768,28(8) is constitutional and does not constitute an impairment of contractual obligations and does not amount to a legislative usurpation of the power of the judiciary to regulate the practice of law.”
During the .same time -frame as Ingrdham, the Florida Supreme Court was faced with another situation involving the legislative claims process. In Gamble v. Wells, 450 So.2d 850 (Fla.1984), a minor sustained severe injury, while in the custody of the State.Department of Public Welfare. The child’s parent retained a lawyer, who signed a standard contingency fee contract to represent the child. Id. at 851-52. As the state had not passed legislation waiving sovereign immunity at the time the injury occurred (and, thus, section 768.28 was not applicable to this case), the attorney petitioned the Legislature for a private relief act.[4] The Legislature passed the requested bill, appropriating $150,000 for the child, but limited the payment of attorneys’ fees to $10,000. Id. at 852. When the lawyer challenged the constitutionality of this provision as an imphirment of his contingency contract, the Florida Supreme Court reversed the Second District Court of 'Appeal’s holding that 'declared that portion of the bill which limited attorneys’ fees to be invalid because of an unconstitutional impairment of contract, The Florida Supreme Court explicitly held that no contract right was impaired. Id. Describing the claims bill as “an act of grace,” the court held-that the Legislature could “allow compensation, decide the amount of compensation, and determine the conditions, if any, to be placed on the appropriation.” Id. at 858 (emphasis added).
A somewhat similar situation was presented to this court in Noel v. Sheldon J. Schlesinger, P.A., 984 So.2d 1265 (Fla. 4th DCA 2008). A victim, Jean Noel, and her parents sued a governmental entity for damages arising out of medical negligence. Id. at 1266. The jury awarded a- total, of $8.5-million, but the relief was reduced to $200,000 due to the applicability of section 768.28(5). Id. The family then petitioned the Legislature. As the culmination of an eight-year legal and legislative process, the Legislature passed a claims bill providing $8.5 million for Ms. Noel and her parents. Id. at 1266. The claims bill also provided for payment of attorneys’ fees and costs up to $1,074,667, representing approximately 13% of the clients’ relief and considerably less than the percentage contracted for or the 25% cap set forth in ‘section 768.28(8). Id. When the attorney moved for a charging lien to recover the additional sums provided' by the contingency fee contract, this court echoed Gamble and held the claims bill to be an act of “legislative grace.” Id. at 1267. We also reasoned that the attorneys’ charging lien was inappropriate in that case because, as enunciated by the ■ Legislature, the property at issue was voluntarily given by the Legislature, “separate and apart” from the recovery in the-lawsuit. Id. Our court in Noel found “a fair reading of the claims bill indicates the legislative, intent to limit [attorneys’] .fees to $1,074,667” and that “[the] legislature has the power to limit attor *354 ney*s fees in a claims bill, no matter what the underlying fee contract provides[.]” Id.
IY. Applicability of the Statute and Precedent to the Instant Case
Judicial determinations concerning the constitutionality of statutes (or portions thereof) are pure questions of law subject to a plenary .or de novo standard of review. State v. Sigler, 967 So.2d 835, 841 (Fla.2007). Because the challenged claims bill is a validly passed law, it is “clothed with a presumption of constitutionality,” Crist v. Fla. Ass’n of Criminal Defense Lawyers, Inc., 978 So.2d 134, 139 (Fla.2008), and all reasonable presumptions must be drawn in favor of its constitutionality. See State v. Bales, 343 So.2d 9, 11 (Fla.1977).
In the instant case, as in Gamble and Noel, the Legislature passed a claims bill that provided a specific amount of attorneys’ fees that was significantly less than the amount contracted for between the Edwards family and their law .firm, Searcy Denney. Indeed, the Legislature in essence reduced Searcy Denney’s contingency fee to less than 1% of the $15 million provided by the Legislature.
Notwithstanding Appellants’ (and the dissenting opinion’s) arguments to the contrary, Gamble and Noel, and the reasoning therein, support the guardianship court’s decision to recognize the Legislature’s prerogative of limiting the payment of fees and costs to $100,000. A claims bill, both before and after the enactment of section 768.28, is a “voluntary recognition of its moral obligation by the legislature” and, as such, is firmly entrenched in the sphere of legislative discretion. Noel, 984 So.2d at 1267 (quoting Gamble, 450 So.2d at 853). “Parties cannot enter into a contract to bind the state in the exercise of its sovereign power.... The legislature was in no way bound to pass legislation conforming with the provisions of the prior contingent fee contract.” Gamble, 450 So.2d at 853. “That the claim[s] bill is separate and apart from the constraints of an earlier lawsuit is demonstrated by the supreme court’s recognition that [the] legislature has the power to limit attorney’s fees in a claims bill, no matter what the underlying fee contract provides[.]” Noel, 984 So.2d at 1267. “A claim[s] bill is not obtainable by right upon the claimant’s proof of entitlement, but rather' is granted strictly as a matter of legislative grace.” Wagner v. Orange Cnty., 960 So.2d 785, 788 (Fla. 5th DCA 2007); see also United Servs. Auto Ass’n v. Phillips, 740 So.2d 1205, 1209 (Fla. 2d DCA 1999).
We are sympathetic to the fact that the legislatively enacted attorneys’ fees cap in this case failed to cover even the $500,000 in Appellants’ costs advanced by Searcy Denney during their representation of the Edwards family. But our responsibility in this matter is to ensure that the claims bill passed by the legislative branch of government meets constitutional muster. As noted above, the Florida Supreme Court, in no uncertain terms, has held that the limitation of attorneys’ fees in a private relief act/claims bill “is a constitutionally permissible exercise of legislative authority and does.not constitute an impairment of contractual obligations proscribed by article I, section 10 of the Florida Constitution.” Gamble, 450 So.2d at 851; see also Ingraham, 450 So.2d at 849.
Appellants contend the ■ Legislature’s claims bill’s fees and costs limitation im-permissibly runs contrary to preexisting statutory limitations. They posit that the Supreme Court’s decision in Ingraham, decided the same day as Gamble, supports the argument that “the 25% limitation on attorney’s fees and costs provided by *355 § 768.28(8) applied” to claims bills, as well as settlements and judgments reached outside of the claims bill process. Ingraham addressed an effort by the plaintiffs attorney to receive fees in excess of 25% of a structured settlement and -the Supreme Court’s application of section 768.28(8) to negate that effort. In the instant case, by contrast-, the law firms are seeking fees and costs representing 25%..of a special legislative appropriation.
Regardless of whether Aaron’s claims bill appropriation is categorized as a “judgment or settlement,” section 768.28(8) does not mandate that the fees collected or received cannot be less than 25%, only that the fees cannot be “in excess of 25 perr cent.” The statute places a cap on the recoverable attorneys’ fees, not a floor. Twenty five percent is not, by its very terms in this statute, a mandatory minimum.
Appellants also argue that the courts’ respecting the Legislature’s $100,000 limitation is a usurpation of judicial power and that this limitation violated the separation of powers doctrine. To the contrary, the course of action proposed by Appellants would violate the separation of powers doc- ■ trine, rewriting two legislative enactments, both section 768.28(8) and Aaron’s claims bill, to dictate attorneys’ fees that are neither mandated by the former (because it sets a ceiling, and not a floor) and are expressly contrary to the latter (which limits fees and costs to $100,000). Appellants’ alternative arguments, including that the legislative action amounted to an unconsti: tutional taking, violated the due process clause, or denied them equal protection, are likewise unpersuasive, particularly where the Florida Supreme Court already has explicitly sanctioned the action at issue. Gamble, 450 So.2d at 851.
Conclusion
Appellants’ (and the dissenting opinion’s) dissatisfaction with the limitation on attorneys’ fees and costs imposed in Aaron’s claims bill is understandable, and the possibility of such a restriction in a claims bill posits an additional factor to be considered by counsel in deciding whether to take on representation in a case in this state involving a sovereign entity defendant. Appellants’ reply brief states, “If there is no reasonable financial incentive for lawyers to take these type cases, the injured will go unrepresented.” To what extent this is true'is beyond our focus.[5] Therefore, we affirm the guardianship court’s ruling.

Affirmed.

CONNER, J., specially concurs with opinion.
CIKLIN, C.J., dissents with opinion.

. The entire $200,000 was applied to partially reimburse Searcy Denney for litigation costs.

. "A special needs trust is a trust agreement, authorized by federal law, which excludes certain assets and income from béing counted against eligibility for certain need-based government benefits.” Rebecca Berg, et al., Q & A: Introduction to the State of Florida Public Guardianship Pooled Special Needs Trust, 81 Fla. B J. 64 (May 2007). "The key purpose of the special needs trust is to provide for the person with a disability without jeopardizing the receipt of public benefits.” Fay Blix, The World of Special Needs Trusts, 50 Orange Cnty. Law. 10 (Nov. 2008).

, The initial version of ■ this statute set the waiver amount at $50,000 per person and $100,000 per incident. § 768.28(5), Fla. Stat. (1969), Those limits were increased to $100,000 per person and $200,000 per incident in 1981, section 768.28(5), Florida Statutes (1981), and raised again to the present levels of $200,000 and $300,000 effective April 27, 2012. § 768.28(5), Fla. Stat. (2012).

. Gamble concerns a private relief act, which is the functional equivalent of a claims bill, as presented in our instant case. Section 768.28 codified the waiver of sovereign immunity, but the method for obtaining relief above that gection's limits is the same as it was prior to the passage of that law — a claimant must petition the Legislature in hopes that it, in its grace, will provide funds for the benefit of the claimant.-

. Our sister courts have commented in cases involving section 768.28(8), Appellants’ “remedy is in the legislature, not the courts.” City of Live Oak v. Harris, 702 So.2d 276, 277 (Fla. 1st DCA 1997) (quoting Hellman v. City of Orlando, 634 So.2d 245, 246 (Fla. 5th DCA 1994)).