# Supreme Court of Florida

_____

No. SC15-1747
_____

**SEARCY, DENNEY, SCAROLA, BARNHART & SHIPLEY, etc., et al.,**
Petitioners,

vs.

**STATE OF FLORIDA,**
Respondent.

[January 31, 2017]

PER CURIAM.

This case is before the Court for review of the decision of the Fourth District

Court of Appeal in Searcy Denney Scarola Barnhart & Shipley, P.A. v. State, 194

So. 3d 349 (Fla. 4th DCA 2015). In a separate decision, the district court certified

the following question to be of great public importance:

> AFTER THE ENACTMENT OF SECTION 768.28, FLORIDA
> STATUTES, AND THE ADOPTION OF FLORIDA SENATE RULE
> 4.81(6), IS IT CONSTITUTIONALLY PERMISSIBLE FOR THE
> FLORIDA LEGISLATURE TO LIMIT THE AMOUNT OF
> ATTORNEYS' FEES PAID FROM A GUARDIANSHIP TRUST
> ESTABLISHED BY A LEGISLATIVE CLAIMS BILL?

Searcy Denney Scarola Barnhart & Shipley, P.A. v. State, 190 So. 3d 120 (Fla. 4th

DCA 2015). Accordingly, we have jurisdiction. See art. V, § 3(b)(4), Fla. Const.

As we explain, we answer the certified question in the negative when such limitation impairs an existing contract. Although the Legislature has complete discretion in its decision whether to grant a legislative claims bill, which is an act of grace, the claims bill may not unconstitutionally impair the preexisting contract between the claimant and the law firm for attorneys' fees, which may be recovered subject to the limits set forth in section 768.28(8), Florida Statutes (2007), Florida's limited waiver of sovereign immunity.

## FACTS AND PROCEDURAL BACKGROUND

This case arose after the birth of Aaron Edwards, during which he sustained a catastrophic brain injury as a result of the negligence of employees at Lee Memorial Health System (Lee Memorial) in 1997. The law firm of Searcy Denney Scarola Barnhart & Shipley, P.A. (Searcy Denney) was retained by the family to seek compensation under a standard contingency fee agreement providing for a payment of 40 percent of any recovery if a lawsuit was filed, plus costs. The agreement also stated that "[i]n the event that one of the parties to pay my claim for damages is a governmental agency, I understand that Federal and Florida Law may limit the amount of attorney fees charged by [Searcy Denney], and in that event, I understand that the fees owed to [Searcy Denney] shall be the amount provided by law."

The case proceeded to a five-week jury trial in 2007, at which the jury found Lee Memorial Health System's employees negligent, and that the negligence resulted in damages to the child in the amount of $28.3 million. The jury also awarded the mother $1.34 million and the father $1 million. Because the hospital was an independent special district of the State of Florida, the trial court enforced the sovereign immunity damage limitations in section 768.28(5), Florida Statutes (2007), and entered a judgment against the hospital for $200,000. This ruling was affirmed per curiam in Lee Memorial Health System v. Edwards, 22 So. 3d 81 (Fla. 2d DCA 2009), and is not at issue in this case.

Searcy Denney and various other firms were involved in litigation of the medical malpractice suit, the first appeal, and a subsequent two-year lobbying effort to secure a claims bill from the Legislature on behalf of the injured child and his parents.[1] Because the waiver of sovereign immunity in section 768.28 limited the family's recovery to only $200,000 of the $28.3 million judgment, a claims bill for the excess judgment amount was filed in the Florida Legislature in 2011, but was not passed during that legislative session. However, in 2012 the Legislature passed a claims bill, chapter 2012-249, Laws of Florida, directing Lee Memorial to pay $10 million, with an additional $5 million to be paid in annual installments of

---

1. In addition to Searcy Denney, the case involves William S. Frates, P.A., Edna L. Caruso, P.A., Vaka Law Group, P.L., and Grossman Roth, P.A.

$1 million each to "the Guardianship of Aaron Edwards, to be placed in a special needs trust created for the exclusive use and benefit of Aaron Edwards, a minor." Ch. 2012-249, § 2, Laws of Fla. The claims bill further stated that payment of fees and costs from funds awarded in the claims bill shall not exceed $100,000. No funds were awarded in the claims bill for the parents. In November 2012, the child's mother petitioned to establish a guardianship over the minor son's property, and Lee Memorial subsequently made its first payment of $10 million.

Searcy Denney, with the full support of the family, then petitioned the guardianship court to approve a closing statement allowing $2.5 million for attorneys' fees and costs. This requested amount was based on the contract that existed with the Edwards family, as limited by the provisions of section 768.28(8), Florida Statutes. Section 768.28(8), a provision of the limited waiver of sovereign immunity statute, states in pertinent part, "No attorney may charge, demand, receive, or collect, for services rendered, fees in excess of 25 percent of any judgment or settlement."

Because the petition to approve the closing statement also contended that the limit on fees contained in the claims bill was unconstitutional, the State of Florida intervened to defend the constitutionality of the claims bill enactment. And because of competing claims for a portion of the proceeds of the claims bill, the guardianship court appointed a guardian ad litem for the injured child. The

evidence presented to the guardianship court revealed that the firms seeking fees and costs spent more than 7000 hours representing the family at trial, on appeal, and during the claims bill process. The evidence also demonstrated that costs of more than $500,000 were expended during the representation. As to the law firm's request for fees and costs of $2.5 million from funds provided by the claims bill, the guardianship court, relying on precedent from this Court and the Fourth District,[2] denied the request for fees in that amount, concluding that the court lacked judicial authority to contravene the fee and cost limitation the Legislature placed in the claims bill. The guardianship court also denied the request to find the fee limitation invalid and sever it from the remainder of the claims bill.

Searcy Denney and the other firms appealed the order of the guardianship court denying the $2.5 million in fees and costs, contending that the $100,000 fee and cost limitation in the claims bill was an unconstitutional impairment of their contract with the Edwards family, and that the provision should be severed from the claims bill. Alternatively, the firms argued in the district court that the guardianship court had inherent jurisdiction to depart from the legislative

---

2. The decisions relied upon were Gamble v. Wells, 450 So. 2d 850 (Fla. 1984), and Noel v. Sheldon J. Schlesinger, P.A., 984 So. 2d 1265 (Fla. 4th DCA 2008).

limitation because section 768.28(8), Florida Statutes, would allow a fee up to 25 percent of the award.[3]

The Fourth District rejected these contentions, stating that "[a]lthough sympathetic to Appellants' situation, we must disagree with their legal arguments based on separation of powers principles, supported by reasoning set forth from the Florida Supreme Court." Searcy Denney, 194 So. 3d at 349. After reciting a brief history of sovereign immunity, both federal and state, the district court noted that section 768.28 is the codification of the State's limited waiver of sovereign immunity in tort actions, which limits recovery against the state or its agencies or subdivisions to $100,000 per person or $200,000 per incident, with a 25 percent cap on attorneys' fees. The statute further states that any portion of the judgment that exceeds the amounts allowed under the limited waiver of sovereign immunity may be paid in whole or in part only by an act of the Legislature.

In finding the fee limitation in the claims bill valid, the district court relied on this Court's decision in Gamble v. Wells, 450 So. 2d 850 (Fla. 1984), the underlying facts of which predated the waiver of sovereign immunity statute. In Gamble, we held that an attorney's fee limitation in a "private relief act" granted by the Legislature was not an unconstitutional impairment of contract because the

_____

3. The fee allowed by the claims bill is less than 1 percent of the $15 million provided by the Legislature.

private relief act was "an act of grace," and the Legislature could "allow compensation, decide the amount of compensation, and determine the conditions, if any, to be placed on the appropriation." Gamble, 450 So. 2d at 853. The Fourth District also noted its earlier case in which it held that the amount allowed in a claims bill was voluntarily given by the Legislature and was separate and apart from the recovery in the lawsuit—and that the Legislature could limit attorneys' fees in a claims bill "no matter what the underlying fee contract provides." Searcy Denney, 194 So. 3d at 353-54 (quoting Noel v. Sheldon J. Schlesinger, P.A., 984 So. 2d 1265, 1267 (Fla. 4th DCA 2008)).

Based on the precedent discussed above, the majority of the district court panel held that the guardianship court was correct in recognizing the Legislature's prerogative to limit the payment of fees and costs to $100,000. While sympathizing with the plight of the attorneys, and of persons in the future who might have difficulty obtaining counsel to take these types of cases, the Fourth District found those concerns to be beyond the court's focus and more a policy consideration to be taken up by the Legislature. Id. at 355 n.5.

Chief Judge Ciklin dissented and opined that under article I, section 10, of the United States Constitution, and article I, section 10, of the Florida Constitution, both of which prohibit any law that impairs the obligation of contracts, the fee agreement with the Edwards family was impaired by the fee limitation provision in

the claims bill. Searcy Denney, 194 So. 3d at 360-61 (Ciklin, C.J., dissenting). He also reasoned that Senate Rule 4.81(6), which provides that a claims bill may not be considered by the Senate until all available administrative and judicial remedies have been exhausted, expanded on the portion of section 768.28 that allows the part of a judgment or settlement that exceeds the statutory waiver of sovereign immunity amount to be reported to the Legislature and paid by an act of the Legislature. Id. at 358 (Ciklin, C.J., dissenting). Chief Judge Ciklin recognized that not all contract impairments are prohibited, but in this case, he concluded, the State failed to show that the "draconian limitation on attorneys' fees and costs was necessary to accomplish some type of 'important public purpose.' " Id. at 361 (Ciklin, C.J., dissenting).

Chief Judge Ciklin also concluded that the Gamble decision relied on by the circuit court and the majority was no longer controlling because the cause of action accrued before the limited waiver of sovereign immunity in section 768.28 and, "[u]nlike the instant case, where the Edwards family was permitted and required to file a lawsuit and obtain a bona fide judgment pursuant to section 768.28(5), the plaintiff in Gamble was not entitled—and thus had no need—to seek relief and exhaust any remedies before going directly to the Legislature." Id. at 363 (Ciklin, C.J., dissenting). He noted that Senate Rule 4.81(6), which also requires a claimant to seek a judgment in a judicial or administrative context before seeking a

claims bill, essentially required the Edwards family to "lawyer up."  Id. at 364

(Ciklin, C.J., dissenting).

Further, Chief Judge Ciklin opined that the ability to employ legal counsel

has long been an important part of the right of access to courts, which includes a

prohibition on the imposition of unreasonable financial burdens that serve to

obstruct individual access to courts; and contingency fee agreements are directly

related to the right of access to courts.  Id. at 365-66 (Ciklin, C.J., dissenting).

Accordingly, Chief Judge Ciklin concluded that the fee limitation in the claims bill

has a chilling effect on the fundamental constitutional right of access to courts and

should be severed from the bill.  Id. at 367-68 (Ciklin, C.J., dissenting).

Thus, the certified question presented in this case turns on the validity of the

additional provision in the claims bill that states: "The total amount paid for

attorney's fees, lobbying fees, costs, and other similar expenses relating to this

claim may not exceed $100,000."  Ch. 2012-249, § 3, Laws of Fla.

## ANALYSIS

### Standards of Review

Searcy Denney's challenge to the fee limitation in the claims bill enacted in

chapter 2012-249, Laws of Florida, is primarily based on contentions that the fee

limitation is unconstitutional and that the district court misinterpreted the

provisions of section 768.28, Florida Statutes.  Chapter 2012-249, Laws of Florida,

being an enactment of the Legislature, is reviewed under the same standard as we apply to review of a statute. The constitutionality of a statute is a pure question of law that is subject to de novo review. City of Miami v. McGrath, 824 So. 2d 143, 146 (Fla. 2002). However, we remain mindful that a statute comes to the Court clothed with a presumption of correctness, and all reasonable doubt about its validity must be resolved in favor of constitutionality. Crist v. Ervin, 56 So. 3d 745, 747 (Fla. 2010).

We are also called upon in this case to interpret the provisions of section 768.28, Florida Statutes. Because this involves an issue of statutory interpretation, review in this Court is also de novo. Bennett v. St. Vincent's Med. Ctr., 71 So. 3d 828, 837 (Fla. 2011).

> Statutory interpretation in any case "begin[s] with the actual language used in the statute because legislative intent is determined first and foremost from the statute's text." Raymond James Fin. Servs., Inc. v. Phillips, 126 So. 3d 186, 190 (Fla. 2013) (quoting Heart of Adoptions, Inc. v. J.A., 963 So. 2d 189, 198 (Fla. 2007)). "When the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." Bennett v. St. Vincent's Med. Ctr., Inc., 71 So. 3d 828, 837-38 (Fla. 2011) (quoting Fla. Birth-Related Neuro. Injury Comp. Ass'n v. Dep't of Admin. Hearings, 29 So. 3d 992, 997 (Fla. 2010)).

Williams v. State, 186 So. 3d 989, 991 (Fla. 2016).

In giving effect to the text of a statute, courts may not extend, modify, or limit the statute's express terms or its reasonable or obvious implications because

to do so would be an abrogation of legislative power.  See McLaughlin v. State, 721 So. 2d 1170, 1172 (Fla. 1998); Holly v. Auld, 450 So. 2d 217, 219 (Fla. 1984). "[T]he statute's plain and ordinary meaning must control, unless this leads to an unreasonable result or a result clearly contrary to legislative intent." Daniels v. Fla. Dep't of Health, 898 So. 2d 61, 64-65 (Fla. 2005) (citing State v. Burris, 875 So. 2d 408, 410 (Fla. 2004)).  All parts of the statute must be given effect, and the Court should avoid a reading of the statute that renders any part meaningless.  See Heart of Adoptions, 963 So. 2d at 199.  Moreover, "all parts of a statute must be read together in order to achieve a consistent whole." Borden v. East-European Ins. Co., 921 So. 2d 587, 595 (Fla. 2006) (quoting Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So. 2d 452, 455 (Fla. 1992) (emphasis omitted)).

This case also requires us to construe the terms of the contingency fee agreement entered into by the attorneys and the Edwards family; therefore, our interpretation of the contract is also de novo.  See Jackson v. Shakespeare Foundation, Inc., 108 So. 3d 587, 593 (Fla. 2013).  With these standards in mind, we turn to the certified question in this case.

## Discussion

As we stated above, the Fourth District certified the following question to this Court:

> AFTER THE ENACTMENT OF SECTION 768.28, FLORIDA STATUTES, AND THE ADOPTION OF FLORIDA SENATE RULE

- 11 -

4.81(6), IS IT CONSTITUTIONALLY PERMISSIBLE FOR THE FLORIDA LEGISLATURE TO LIMIT THE AMOUNT OF ATTORNEYS' FEES PAID FROM A GUARDIANSHIP TRUST ESTABLISHED BY A LEGISLATIVE CLAIMS BILL?

The Fourth District held in the affirmative, concluding that the Legislature in its discretion could place conditions in the claims bill, including a limitation on the amount of attorneys' fees and other fees and costs that could be paid from that amount.

We agree with the district court that a claims bill is a "voluntary recognition of its moral obligation by the legislature" and is firmly entrenched in legislative discretion. Searcy Denney, 194 So. 3d at 354 (quoting Noel, 984 So. 2d at 1267 (quoting Gamble, 450 So. 2d at 853)). This principle is not in dispute. We disagree, however, with the district court's conclusion that the fee provisions of section 768.28 and constitutional prohibitions against impairment of contract are of no consequence in this case.

Section 768.28(1), Florida Statutes, waives sovereign immunity protection for actions at law against the state or its agencies or subdivisions for tort money damages, "but only to the extent specified in this act." § 768.28(1), Fla. Stat. (2007). Section 768.28(5), Florida Statutes, limits recovery under the statute to $100,000 per person or $200,000 per incident. "However, a judgment or judgments may be claimed and rendered in excess of these amounts and may be settled and paid pursuant to this act up to $100,000 or $200,000, as the case may

- 12 -

be; and that portion of the judgment that exceeds these amounts may be reported to the Legislature, but may be paid in part or in whole only by further act of the Legislature." § 768.28(5), Fla. Stat. (2007). Thus, the Legislature specifically directs that recovery of any amounts that exceed the limited waiver of sovereign immunity may be collected only by way of a legislative claims bill. This is the procedure by which Searcy Denney and the related firms sought further payment of the $28.3 million judgment obtained in the circuit court. By litigating and obtaining this judgment before seeking a claims bill, Searcy Denney also met the requirements of Senate Rule 4.81(6), which requires that a claims bill may not be heard or considered by the Senate "until all available administrative and judicial remedies have been exhausted."

Section 768.28 also provides for a limit on attorneys' fees to be paid from the judgment amounts recovered. "No attorney may charge, demand, receive, or collect, for services rendered, fees in excess of 25 percent of any judgment or settlement." § 768.28(8), Fla. Stat. (2007). As stated above, in interpreting statutory provisions, we must read all parts of the statute together to "achieve a consistent whole." Accordingly, we must read the attorneys' fee provision in subsection (8) in conjunction with that portion of subsection (5) of section 768.28, which provides a specific method for seeking further payment of a judgment by way of a claims bill. That reading results in our conclusion that the Legislature

intended in section 768.28(8) to allow fees to be charged, demanded, received, or collected up to 25 percent of the judgment amount when payment is ordered by the circuit court, as well as when payment of all or part of that judgment is ordered by the Legislature in a claims bill, as expressly provided for in section 768.28(5). Thus, the fee limitation placed in the claims bill in this case, which limited the fees and costs to less than one percent of the amount of the excess judgment ordered to be paid, is not in accord with the existing mandate of section 768.28, Florida Statutes. However, even if we could find that the Legislature properly exercised its right to limit fees under an extension of its sovereign immunity in a claims bill on a case by case basis, to approve that limitation we must also find that it does not contravene the constitutional prohibitions against impairment of preexisting contracts. As we explain next, that we cannot do in this case.

<strong>Impairment of Contract</strong>

Article I, section 10, of the United States Constitution prohibits any law that impairs the obligation of contracts. See art. I, § 10, U.S. Const. In Florida, article I, section 10, of the Florida Constitution mandates that "[n]o . . . law impairing the obligation of contracts shall be passed." "As part of the Florida Constitution's Declaration of Rights, this right belongs to the people . . . as against the government." Citrus County Hosp. Bd. v. Citrus Mem'l Health Found., Inc., 150 So. 3d 1102, 1106 (Fla. 2014) (quoting Traylor v. State, 596 So. 2d 957, 963 (Fla.

1992) (explaining that "each right" in the Declaration of Rights is "a distinct freedom guaranteed to each Floridian against government intrusion" and "operates in favor of the individual, against [the] government")).  To impair a preexisting contract, a law must "have the effect of rewriting antecedent contracts" in a manner that "chang[es] the substantive rights of the parties to existing contracts."  Manning v. Travelers Ins. Co., 250 So. 2d 872, 874 (Fla. 1971).

The Searcy Denney "Contract for Services" executed January 19, 1999, provides for a contingency fee of up to 40 percent of the recovery if suit is filed, plus 5 percent if an appeal is filed or if, "[f]ollowing a judgment entered either as a result of Court or arbitration proceedings, additional proceedings (such as garnishment, attachment, or supplementary proceedings) are brought by or at the direction of SEARCY DENNEY SCAROLA BARNHART & SHIPLEY, P.A. in an effort to collect on any judgment."  The contract also provides that

> [i]n the event that one of the parties responsible to pay my claim for damages is a governmental agency, I understand that Federal and Florida law may limit the amount of attorney fees charged by SEARCY DENNEY SCAROLA BARNHART & SHIPLEY, P.A.  In that event, I understand that the attorney fees owed to SEARCY DENNEY SCAROLA BARNHART & SHIPLEY, P.A. shall be the amount provided by law.

Searcy Denney's services under the contract resulted in a $28.3 million judgment. Because the limited waiver of sovereign immunity in section 768.28 limited payment under that $28.3 million judgment to $200,000 in the judicial proceeding,

- 15 -

Searcy Denney and the other firms assisting the family followed the express provisions of section 768.28(5), which allows the excess judgment, in whole or in part, to be paid by the Legislature in a discretionary claims bill. Thus, the firms' efforts at seeking such a claims bill from the Legislature were anticipated by the provisions of section 768.28(5). The provisions of the limited waiver of sovereign immunity statute that recognized the fee limit embodied in section 768.28(8) were also anticipated at the time of the execution of the contract.

As noted earlier, the law firms' services were in accord with Senate Rule 4.81(6), which provides that a claims bill may not be considered by the Senate until all available administrative and judicial remedies have been exhausted. We are constrained to conclude that in entering into this contract with the Edwards family, and in pursuing this case through trial, appeal, and the legislative claims bill process, Searcy Denney and the other firms assisting the family were acting in good faith and with the expectation that, pursuant to contract, fees may be recovered in an amount up to 25 percent of any portion of the judgment recovered—regardless of the method or vehicle of recovery.

State regulations that restrict a party to gains it reasonably expected from the contract do not constitute substantial impairment. U.S. Fidelity & Guar. Co. v. Dep't of Ins., 453 So. 2d 1355, 1360 (Fla. 1984) (quoting Energy Reserves Group, Inc. v. Kansas Power & Light Co., 459 U.S. 400, 411 (1983)). In this case, the

- 16 -

contract at issue called for a fee of 40 percent of the recovery, which is a standard contingency provision.[4] However, section 768.28 limited that fee to 25 percent, and the contract clearly recognized the validity of such a limitation, as do we. Searcy Denney and the Edwards family reasonably expected that fees would be paid based on that limitation set forth in the waiver of sovereign immunity statute if a governmental entity was responsible for payment. Thus, the $100,000 fee provision contained in the claims bill significantly limited the gains reasonably expected from the contract.

We reiterated in Pomponio v. Claridge of Pompano Condominium, Inc., 378 So. 2d 774 (Fla. 1979), as we earlier held in Yamaha Parts Distributors Inc. v. Ehrman, 316 So. 2d 557 (Fla. 1975), that "virtually no degree of contract impairment is tolerable." Pomponio, 378 So. 2d at 780; see also Fla. Ins. Guar. Ass'n, Inc. v. Devon Neighborhood Ass'n, Inc., 67 So. 3d 187, 193 n.6 (Fla. 2011). However, we also recognized that the holding that "virtually" no impairment is tolerable "necessarily implies that some impairment is tolerable." Pomponio, 378

_____

4. We note that rule 4-1.5(f)(4)(B)(i)b. of the Rules of Professional Conduct governing attorneys' fees for legal services provides that in contingency fee agreements for personal injury and other similar litigation, under certain conditions pertinent here, fees are limited to 40 percent of recovery up to $1 million, 30 percent of recovery between $1 million and $2 million, and 20 percent of any portion of the recovery exceeding $2 million. The fee sought by Searcy Denney does not exceed these amounts.

So. 2d at 780.  The question thus becomes how much impairment is tolerable and how to determine that amount.  To answer that question, in Pomponio we proposed a balancing test that "allow[ed] the court to consider the actual effect of the provision on the contract and to balance a party's interest in not having the contract impaired against the State's source of authority and the evil sought to be remedied."  Scott v. Williams, 107 So. 3d 379, 385 (Fla. 2013) (quoting Fla. Ins. Guar. Ass'n, 67 So. 3d at 193 n.6).  "[T]his becomes a balancing process to determine whether the nature and extent of the impairment is constitutionally tolerable in light of the importance of the State's objective, or whether it unreasonably intrudes into the parties' bargain to a degree greater than is necessary to achieve that objective."  Pomponio, 378 So. 2d at 780.

An impairment may be constitutional if it is reasonable and necessary to serve an important public purpose.  Id. at 778-79 (quoting U.S. Trust Co. v. New Jersey, 431 U.S. 1, 25 (1977)).  However, where the impairment is severe, "[t]he severity of the impairment is said to increase the level of scrutiny to which the legislation will be subjected."  U.S. Fidelity, 453 So. 2d at 1360 (quoting Energy Reserves, 459 U.S. at 411).  There must be a "significant and legitimate public purpose behind the regulation."  Energy Reserves, 459 U.S. at 411.

Where a legislatively imposed fee limitation substantially impairs a party's preexisting contract for representation and payment of agreed-upon attorneys' fees,

especially when those fees meet the measure that the Legislature has found reasonable under section 768.28(8), we can discern no apparent benefit to the injured party attempting to obtain redress for injury pursuant to the contract. In this case, in order to obtain representation, the Edwards family agreed to pay fees in accord with the limits of sovereign immunity; and the family supports the claim for fees by Searcy Denney pursuant to that contract and the statute.

Nor do we see any significant or legitimate public purpose to be achieved by the limitation. Because up to 25 percent of the monies recovered by judgment in circuit court are legislatively approved as a fee under section 768.28(8), we can discern no legitimate public purpose or justification to disapprove that same percentage fee when a further portion of the judgment is paid by legislative enactment expressly anticipated in section 768.28. This is especially true when the legislative action substantially impairs the preexisting contract, as it does in this case. We do, however, see harm arising from such an enactment. As Chief Judge Ciklin aptly stated, the claims bill's attorneys' fee limitation and the district court's affirmance of it have "now invaded and will continue to wreak a chilling effect upon the sacrosanct and fundamental constitutional right to access to our courts—particularly for those suffering damages at the hands of government." Searcy Denney, 194 So. 3d at 367 (Ciklin, C.J., dissenting). We also agree with Chief Judge Ciklin that "the state has not shown that its draconian limitation on

attorney's fees and costs was necessary to accomplish some type of 'important public purpose.' " Id. at 361 (Ciklin, C.J., dissenting).

The right to contract for legal services in order to petition for redress is a right that is related to the First Amendment, and any impairment of that right not only adversely affects the right of the lawyer to receive his fee but the right of the party to obtain, by contract, competent legal representation to ensure meaningful access to courts to petition for redress. The United States Supreme Court has stated, "We hold that the freedom of speech, assembly, and petition guaranteed by the First and Fourteenth Amendments gives petitioner the right to hire attorneys on a salary basis to assist its members in the assertion of their legal rights." United Mine Workers of America, Dist. 12 v. Illinois State Bar Ass'n, 389 U.S. 217, 221-22 (1967) (vacating judgment enjoining union from hiring salaried attorney to assist members in assertion of legal rights with respect to workers' compensation claims). This same constitutional right extends to a party's right and practical ability to retain an attorney by contingency fee contract in order to have meaningful access to courts. The "draconian limitation" on the fees in this case, in contravention of the preexisting contract and the provisions of section 768.28, sets an unfortunate precedent that, if allowed to stand, would effectively chill the right of future litigants to obtain effective counsel to make their case for compensation due for injuries caused by the State or its agencies and subdivisions.

The First Amendment to the United States Constitution guarantees, in pertinent part, the right of the people to "petition the Government for a redress of grievances."[5] Such a petition may be filed in the courts, and Florida guarantees access to courts in article I, section 21, of the Declaration of Rights in Florida's constitution. However, the right to petition for redress is not confined to the courts. See Cal. Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972) ("Certainly the right to petition extends to all departments of the Government."). Therefore, the legislative fee limitation in contravention of the contract and the statute chills, and effectively impairs, the rights of parties to obtain effective counsel to seek redress for them in both the courts and from the Legislature.

For all these reasons, we conclude that the $100,000 fee limitation contained in the claims bill impermissibly impairs the preexisting contract between Searcy Denney and the Edwards family, and that nothing has been presented to justify this violation of the family's constitutional right to contract with legal counsel to seek full redress of injury, as well as Searcy Denney's contract right to receive the agreed-upon fees. This is especially true where, as here, the services producing the

---

5. This First Amendment right to petition for redress has been made applicable to the States by the Fourteenth Amendment to the United States Constitution. See DeJonge v. Oregon, 299 U.S. 353, 364 (1937).

judgment and claims bill, and the fee amount sought under the contract, are in accord with sections 768.28(5) and (8). The Legislature has expressly provided for both the claims bill mechanism and for fees payable from the judgments obtained under the limited waiver of sovereign immunity statute. We conclude the permissible fees based upon recovery of those funds include funds recovered pursuant to the claims bill process.

We also agree with Chief Judge Ciklin that our prior decision in Gamble does not compel a different result in this case, as we discuss next.

### **Gamble v. Wells**

In 1984, we held in Gamble v. Wells that the Legislature could place a monetary limitation on the attorneys' fees for Gamble's attorney in a private relief act that awarded Gamble, as guardian, compensation for injuries to her ward that were inflicted while the State had custody of the ward. 450 So. 2d at 851. Because the State had not waived sovereign immunity at the time the cause of action accrued, "the only possible means available for recovery would be a private relief act" by the Legislature. Id. at 852. When the Legislature passed the private relief act, it limited the attorneys' fees payable to Gamble's attorney to an amount less than that provided by the standard contingency fee contract that Gamble and her attorney had executed.

We held in <u>Gamble</u> that the limitation in the private relief act was not an unconstitutional impairment of contract because the Legislature was voluntarily recognizing its moral obligation based on justice and fair treatment for someone "who was legally remediless to seek damages." <u>Id.</u> at 853. We held that the private relief act was a matter of legislative grace in which the Legislature could place any conditions it determined appropriate. <u>Id.</u>

However, since our decision in <u>Gamble</u>, circumstances and the law have changed. Plaintiffs such as Gamble are no longer remediless, but have a remedy by way of the limited waiver of sovereign immunity in section 768.28, which allows suit or settlement for torts committed by the State or one of its agencies or subdivisions. In that statute, the Legislature has set forth the percentage of such recovery that it deems proper and reasonable for attorneys' fees, which is not to exceed 25 percent of the amounts recovered. And in that statute, the Legislature has provided a mechanism by which the excess of any such judgment or settlement may be sought by way of a legislative claims bill, as occurred in this case. Accordingly, we conclude that <u>Gamble</u> is not dispositive of the issue in this case due to changes in law and circumstance.

Chief Judge Ciklin set forth a clear explanation of why <u>Gamble</u> is no longer dispositive. He states in his dissent:

> [C]hanges in the law and legislative procedure have rendered <u>Gamble</u> distinguishable and inapplicable to the facts at hand. After the cause

- 23 -

of action accrued in Gamble and before Aaron's family formally entered into the subject contingency fee agreement, the Legislature enacted section 768.28, which, for the first time, (1) afforded a limited monetary waiver of immunity for tort actions; (2) required finality in an official judicial or administrative proceeding as a condition precedent to invoking the claim bill process; (3) recognized the possibility of a contingency fee agreement in procuring the official judicial or administrative final order by imposing a twenty-five percent cap as to any attorneys' fees payable under a contingency fee agreement; and (4) provided for ultimate presentation to the Legislature for its consideration when the newly required official administrative or judicial action exceeded the limits of liability.

With the enactment of section 768.28, the Legislature's exercise of its prerogative to choreograph rights pertaining to sovereign immunity went from a blank page with no codified rights, save for some undefined historical doctrine, to a multi-step process for those who suffered damages because of the negligence of a sovereign entity. It was in reliance on this legislative action that the Edwards family and the firm came to a rock solid agreement.

Searcy Denney, 194 So. 3d at 363 (Ciklin, C.J., dissenting).

We agree that because of these changes in the law, Gamble is not dispositive of the question presented in this case. The enactment of section 768.28 allowing suit for damages against the State, the requirement of finality in an official judicial or administrative proceeding before a claims bill may be considered, and the Legislative provision in section 768.28(8) allowing for attorneys' fees of up to 25 percent of the judgment or settlement amounts recovered—as well as the parties' reasonable reliance on all these factors in entering into the attorneys' fee contract

for legal services—have altered the considerations that underlay our decision in that case.[6]

We emphasize that our decision here is in no way intended to impinge on legislative discretion in the decision whether to enact a claims bill in the first instance. That legislative discretion to perform an act of grace in passing such a claims bill, and in determining the amount of compensation to be included in a claims bill, is sacrosanct pursuant to separation of powers. See art. II, § 3, Fla. Const. However, once that discretion has been exercised by enactment of a claims bill awarding payment of all or part of an excess judgment for damages obtained under section 768.28, the Legislature may not impair the preexisting contract rights of the parties for attorneys' fees as occurred by the fee and cost limit imposed in the claims bill in this case.

## Severability

We also agree with Chief Judge Ciklin's conclusion that the invalid fee limitation may properly be severed from the claims bill. He concludes, as do we, that the intent and purpose of the bill can be accomplished without the invalid fee limitation. Searcy Denney, 194 So. 3d at 368 (Ciklin, C.J., dissenting). "The rule

---

6. The district court below also relied on its earlier decision in Noel v. Sheldon J. Schlesinger, P.A., 984 So. 2d 1265 (Fla. 4th DCA 2008). Because that decision was based on Gamble, it is also no longer applicable here.

is well established that the unconstitutionality of a portion of a statute will not necessarily condemn the entire act." Cramp v. Bd. of Pub. Educ., 137 So. 2d 828, 830 (Fla. 1962). We have held that "[s]everability is a judicially created doctrine which recognizes a court's obligation to uphold the constitutionality of legislative enactments where it is possible to remove the unconstitutional portions." State v. Catalano, 104 So. 3d 1069, 1080 (Fla. 2012) (quoting Fla. Dept. of State v. Mangat, 43 So. 3d 642, 649 (Fla. 2010)). It is designed to show deference to the Legislature in enacting laws but still respect the judicial branch's role in separation of powers. Id. Further, our ability to sever the unconstitutional portion of a statute does not depend on the enactment containing a severability clause. Fla. Hosp. Waterman, Inc. v. Buster, 984 So. 2d 478, 493 (Fla. 2008).

Part of a statute that is declared unconstitutional will be severed if "(1) the unconstitutional provisions can be separated from the remaining valid provisions, (2) the legislative purpose expressed in the valid provisions can be accomplished independently of those which are void, (3) the good and the bad features are not so inseparable in substance that it can be said that the Legislature would have passed the one without the other and, (4) an act complete in itself remains after the invalid provisions are stricken." Lawnwood Med. Ctr., Inc. v. Seeger, 990 So. 2d 503, 518 (Fla. 2008) (quoting Cramp, 137 So. 2d at 830). The key is whether the overall legislative intent is still accomplished without the invalid provision. See Martinez

- 26 -

v. Scanlan, 582 So. 2d 1167, 1173 (Fla. 1991) (quoting E. Air Lines, Inc. v. Dep't of Revenue, 455 So. 2d 311, 317 (Fla. 1984)).

The Legislature clearly intended to provide compensation for Aaron Edwards' significant injuries and future care well beyond the limited amounts recoverable under section 768.28(5). We have no reason to conclude that the Legislature would not have provided this substantial compensation absent the fee limitation contained in the claims bill in this case. Under the test for severability we also consider whether the remaining provisions can still be accomplished if the fee limit provision is severed from the remaining provisions. "The severability analysis answers the question of whether 'the taint of an illegal provision has infected the entire enactment, requiring the whole unit to fail.' " Ray v. Mortham, 742 So. 2d 1276, 1280 (Fla. 1999) (quoting Schmitt v. State, 590 So. 2d 404, 414 (Fla. 1991)). Severability is proper when "[t]he elimination of the subject language would leave intact a valid, coherent, workable statute [and the] invalid language did not so permeate or saturate the remainder of the act as to make it impossible to enforce the remaining valid portions after the elimination of those which are invalid." Cramp, 137 So. 2d at 831.

In this case, we conclude that the remainder of the act—providing substantial compensation for Aaron's injuries and care—can still be accomplished if the fee limitation is severed. The act, after severance, would still meet the

requirement of being "complete in itself." Thus, we hold that the valid portions of the claims bill may be severed from the invalid fee limitation without disrupting the integrity of the remainder of the act; and the overall purpose of the act—compensation to benefit the injured child in this case—can still be accomplished. See Ray, 742 So. 2d at 1283. In a different context, we refused to strike an entire enactment that was intended to serve an important and beneficial purpose in Schmitt. There, we severed an unconstitutional portion of a statute intended to prevent exploitation of children, leaving the remainder of the statute intact because it served the legislative purpose of rooting out child exploitation and because "this Court would do a grave disservice . . . by striking the remainder of the statute simply because a single clause is unconstitutional." Schmitt, 590 So. 2d at 415. We also found in Schmitt that the remainder of the act was "complete in itself . . . after the invalid portion has been removed." Id.

Similarly, in this case, we are loathe to strike the entire claims bill, which is clearly intended to provide critical compensation for Aaron's injuries in this case. To do so would be a grave disservice to both the child and his family, as well as to the Legislature, which intended this beneficial result. Under our longstanding law governing severability, we can uphold the remainder of the claims bill in this case after striking the unconstitutional fee limitation precisely because the remainder of the bill continues to be a valid, complete act that can accomplish the important and

- 28 -

beneficial purpose intended by the Legislature. "The offending subsections can be separated without any adverse effect on its remaining portions, leaving intact a workable and helpful statute." Fla. Hosp. Waterman, Inc., 984 So. 2d at 494.

For all these reasons, we conclude there is no impediment to the law firms seeking contractual attorneys' fees and costs in this case pursuant to the preexisting contract up to and including the amount previously sought—an amount that the Edwards family has urged the courts to award—based on the limitation contained in section 768.28(8), which is 25 percent of the initial $10 million payment made pursuant to the claims bill enactment.

## CONCLUSION

Based on the foregoing, we answer the certified question in the negative and hold that the fee limitation in the claims bill, chapter 2012-249, Laws of Florida, is unconstitutional and may not stand when such a limitation impairs a preexisting contract. We further hold that the valid portion of the act may be severed from the invalid portion and still accomplish the beneficial purpose of the act in providing compensation due to the injured child in this case. Accordingly, we quash the decision of the Fourth District in Searcy Denney Scarola Barnhart & Shipley, P.A. v. State of Florida, 194 So. 3d 349 (Fla. 4th DCA 2015), and remand to the district court for proceedings consistent with this decision.

It is so ordered.

PARIENTE, LEWIS, and QUINCE, JJ., and PERRY, Senior Justice, concur.
CANADY, J., dissents with an opinion.
POLSTON, J., dissents with an opinion, in which LABARGA, C.J., concurs.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND
IF FILED, DETERMINED.

CANADY, J., dissenting.

I dissent from the majority's decision regarding both the certified question

and the issue of severability.

I would adhere to our decision in Gamble v. Wells, 450 So. 2d 850 (Fla.

1984), and answer the certified question in the affirmative. The enactment of

section 768.28, Florida Statutes, has in no way undermined the reasoning of

Gamble, which recognized the broad constitutional power of the Legislature in

addressing a claims bill:

> [The claimant] could only request that the legislature grant the
> compensation sought. The legislature then, as a matter of grace, could
> allow compensation, decide the amount of compensation, and
> determine the conditions, if any, to be placed on the appropriation.
>       Parties cannot enter into a contract to bind the state in the
> exercise of its sovereign power. The legislature had the power to
> place the attorney's fee limitation in [the claims bill]. [The claimant],
> by the terms of his contingent fee contract with [his attorney], could
> not deprive the legislature of this power. The legislature was in no
> way bound to pass legislation conforming with the provisions of the
> prior contingent fee contract.

Id. at 853. The Legislature's action in adopting section 768.28 did not curtail the

constitutional authority of the Legislature. I therefore would approve and adopt

Judge Forst's cogently reasoned opinion for the Fourth District. See Searcy

- 30 -

Denney Scarola Barnhart & Shipley, P.A. v. State, 194 So. 3d 349 (Fla. 4th DCA 2015).

I strongly disagree with the conclusion of the majority concerning severability. In deciding that legislative intent can be respected and given effect by requiring the expenditure of appropriated funds for a purpose that is expressly prohibited by the Legislature, the majority has turned our severability jurisprudence topsy-turvy.

We have recognized that "if severance would cause results unanticipated by the legislature, there can be no severance of the invalid parts[, and] the entire law must be declared unconstitutional." E. Air Lines, Inc. v. Dep't of Revenue, 455 So. 2d 311, 317 (Fla. 1984) (citing Kass v. Lewin, 104 So. 2d 572 (Fla. 1958)). Severance is permissible only "if the legislative purpose expressed in the valid provisions can be accomplished independently of those which are void; and the good and bad features are not inseparable and the Legislature would have passed one without the other." Presbyterian Homes of Synod of Florida v. Wood, 297 So. 2d 556, 559 (Fla. 1974) (citing Cramp v. Bd. of Pub. Instruction of Orange County, 137 So. 2d 828 (Fla. 1962)). Here, there is no basis for concluding that the Legislature would have anticipated that appropriated funds would be used for a purpose that was expressly prohibited. And there is no basis for the view that the specific allocations of funds for distinct purposes mandated by the Legislature are

"not inseparable." The result of severance here is that the Legislature's purpose is thwarted in two ways: less funds than appropriated are provided to the special needs trust and more funds than appropriated are provided for attorneys' fees. Severance thus wreaks havoc on the legislative scheme.

POLSTON, J., dissenting.

I would answer the certified question in the affirmative. The Florida law limiting the amount of attorneys' fees does not unconstitutionally impair a pre-existing contract that expressly contemplates and accepts that Florida law may limit the amount of attorneys' fees.

As acknowledged by the majority, it is well-settled law that the Florida Legislature has complete discretion in its decision to grant a legislative claims bill, which is an act of grace. See Gamble v. Wells, 450 So. 2d 850 (Fla. 1984). The Legislature could indisputably have chosen to make no award to the injured person and pay no attorneys' fees. But the Legislature awarded $15,000,000 to the Guardianship of Aaron Edwards. Ch. 2012-249, Laws of Florida. It also provided $100,000 for attorneys' fees and other costs:

> Section 3. The amount paid by Lee Memorial Health System pursuant to s. 768.28, Florida Statutes, and the amount awarded under this act are intended to provide the sole compensation for all present and future claims arising out of the factual situation described in this act which resulted in the injuries suffered by Aaron Edwards. The total amount paid for attorney's fees, lobbying fees,

> costs, and other similar expenses relating to this claim
> may not exceed $100,000.

Id. (emphasis added).

The majority holds that this award of attorneys' fees unconstitutionally impairs the fee agreement between the Searcy Denney firm and its clients. However, the fee agreement specifically provides that "[i]n the event that one of the parties to pay my claim for damages is a governmental agency, I understand that Federal and Florida Law may limit the amount of attorney fees charged by [Searcy Denney], and in that event, I understand that the fees owed to [Searcy Denney] shall be the amount provided by law." (Emphasis added.) Lee Memorial Health System of Lee County is a governmental agency, and the Florida law enacted by the Legislature limited the amount of attorneys' fees to $100,000. Accordingly, because the fee agreement explicitly anticipates and agrees to an award of fees as limited by Florida law and in the amount provided by law, there is no impairment of contract. For there to be an unconstitutional impairment of the contract as the majority concludes, the fee agreement would have to be written differently.

The majority also severs the award of attorneys' fees that it claims is unconstitutional so that the award to Aaron Edwards remains and is left untouched by its ruling. Although this is a favorable result for the plaintiff and his attorneys, it is not what the law requires. The Legislature was very clear that it was awarding

- 33 -

only $100,000 for anyone other than Aaron Edwards. However, the result of the majority's ruling is to take $2,500,000 from the Guardianship of Aaron Edwards for attorneys' fees, a result that was explicitly rejected by the Legislature with its enactment of the claims bill. Unlike the majority, I cannot read a different legislative intent and purpose into the claims bill. See Lawnwood Med. Ctr., Inc. v. Seeger, 990 So. 2d 503, 518 (Fla. 2008) (delineating the four-part test for determining whether severance is appropriate, including whether "the legislative purpose expressed in the valid provisions can be accomplished independently of those which are void" and whether "the good and the bad features are not so inseparable in substance that it can be said that the Legislature would have passed the one without the other" (quoting Cramp v. Bd. of Pub. Instruction of Orange Cty., 137 So. 2d 828, 830 (Fla. 1962))).

I respectfully dissent.

LABARGA, C.J., concurs.

Application for Review of the Decision of the District Court of Appeal – Certified Great Public Importance

     Fourth District - Case No. 4D13-3497

     (Palm Beach County)

Edna Louise Caruso of Edna L. Caruso P.A., West Palm Beach, Florida; Christian Dietrich Searcy and Jack Patrick Hill of Searcy Denney Scarola Barnhart & Shipley, P.A., West Palm Beach, Florida; and George Alexander Vaka of the Vaka Law Group, P.L., Tampa, Florida,

for Petitioners

Pamela Jo Bondi, Attorney General, and Rachel Erin Nordby, Deputy Solicitor General, Tallahassee, Florida,

for Respondent

Jessie Leigh Harrell, Rebecca Bowen Creed, and Bryan Scott Gowdy of Creed & Gowdy, P.A., Jacksonville, Florida,

for Amicus Curiae Florida Justice Association

Edward Downey and Robert Lee McElroy, IV of Downey | McElroy, P.A., Palm Beach Gardens, Florida,

for Amicus Curiae Guardian Ad Litem

George T. Levesque, Tallahassee, Florida,

for Amici Curiae the Florida Senate and Andy Gardiner, in his official capacity as President of the Florida Senate

Matthew Joseph Carson, Tallahassee, Florida,

for Amici Curiae the Florida House of Representatives and Steve Crisafulli, in his official capacity as Speaker of the Florida House of Representatives