WENTWORTH, Judge.
Appellant seeks review of a December 1985 final judgment which found liability for breach of a 1982 contract, and awarded 7.95 million dollars in damages.
Appellant contends the lower court erred in invoking equity to circumvent a “subject to appropriation” clause in the contract.[1] We reverse for entry of judgment for appellant insofar as the award represents purchases not funded by legislative appropriation, because no equitable issue is properly presented upon the record before us. The stipulations and exhibits establish that the contract was bid, executed and amended with the cited explicit condition precedent, making the purchases for future years contingent on appropriation; that such condition did not occur for two of the years in question;[2] and that the Department did not contribute to the lapse. To the extent, however, that the claim arises in part from a difference between the contract unit price and the rate referenced by the appropriation act, we conclude that the “subject to appropriation” clause does not foreclose liability otherwise accruing under the contract for purchase of materials for *1083 which appropriation was made at a rate different from that previously agreed by the parties. Clearly that claim presents more complex issues which have not been treated in the judgment before us, are not addressed with any specificity in the briefs on appeal, and which require consideration on remand, subject also to our disposition infra of a discovery issue argued by appellant.
Guaranty Fuels, Inc. in March 1982 entered into a contract with the Florida Department of Health and Rehabilitative Services (HRS), agreeing to supply wood pellet fuel for an alternative energy project at Florida State Hospital (FSH). The contract was bid, executed, and amended “subject to appropriation” by the Florida Legislature for the future five-year period contemplated. Under the contract, Guaranty was to supply 50,000 tons of wood pellets per year. The Department of General Services (DGS), as contracting agent acting on behalf of HRS and FSH, was to pay $63.36 per ton to Guaranty. The Florida Legislature in 1980, in anticipation of the project, appropriated $2 million to convert Florida State Hospital boilers to burn wood pellets.
After entering into the contract, Guaranty constructed an $8.5 million plant in Florida to manufacture wood pellets. Guaranty then assigned all its right, title and interest in the contract to appellee Southern Energy, Ltd. (SEL), in which Guaranty was a general partner.
The legislature fully funded the purchase of 50,000 tons annually in 1982-83 and 1983-84. Problems plagued the boiler conversion efforts at FSH throughout 1982 and 1983, however, and the hospital refused to take delivery of or pay for the specified amount of wood pellets. Under an amended agreement among the parties, DGS and HRS were to begin payment in April 1984 for weekly deliveries of wood pellets at a $65.53 per ton price.
The legislature underfunded the project in 1984-85, appropriating $855,360 less than the $3,168,000 annual amount contemplated in the 1982 contract as amended. A proviso[3] attached to the 1984-85 Appropriation Act prohibited HRS from funding the wood pellet project from other sources, and directed DGS to develop an “economically viable option” or alternative to the contract, to be reported to the Governor and legislative committees by December 1984.
SEL advised DGS that it rejected the altered contract terms dictated by the appropriation act. From July 1984 until January 1985, FSH made reduced payments to SEL pursuant to the 1984-85 appropriations act. In November 1984, a fire and explosion destroyed one of the FSH converted boilers, but FSH continued to take delivery of the pellets and make weekly payments to SEL until January 1985.
SEL filed suit against HRS and DGS, claiming breach of contract, anticipatory breach of contract, impairment of contract, and breach of duty to seek appropriations. DGS was dismissed from the suit. SEL subsequently dismissed all counts except for breach of contract and anticipatory breach of contract.
Following oral argument, the trial court entered an order by which it found that “the letter of the law favors ... the Florida Department of Health and Rehabilitative Services,” but equity should be invoked because neither HRS nor the legislature had demonstrated exigent financial conditions to justify the under-appropriation. A jury trial was scheduled, but never held, on the damages issue. The parties stipulated to damages of $7.95 million, and the trial court entered a judgment awarding SEL $7.95 million in damages.
*1084 Under Art. II, sec. 3, Florida Constitution, the separation of powers provision, the legislature alone has power to appropriate funds. Brown v. Firestone, 382 So.2d 654 (Fla.1980). Article VII, sec. 1(c), Florida Constitution, provides that no money shall be drawn from the state treasury except pursuant to appropriations made by law. As a corollary to that provision, section 216.311, Florida Statutes, provides that no agency may contract in excess of funds appropriated to it. Under section 287.042, Florida Statutes, the Department of General Services has authority to enter into contracts for the purchase of commodities on behalf of other state agencies within the confines of the cited constitutional and statutory framework.
The contract in this case was bid, negotiated and executed “subject to appropriation” by the legislature. The appropriation clause was part of every document, including the invitation to bid the contract and two subsequent agreements, involved in the contract process among DGS, HRS and SEL. DGS advised bidders in writing that the contract was subject to cancellation for nonappropriation of funds, that the legislature would not fund the contract for its full five years in one appropriation, and that the legislature appropriates funds only on a biennial basis, releasing operating expenses from year to year. SEL therefore had unequivocal actual notice that the contract was subject to appropriation for future years.
The “subject to appropriation” clause does not render the contract illusory for lack of mutuality because HRS was obligated by its terms to diligently seek appropriation from the legislature to fund the stated terms. The parties stipulated that HRS performed that duty.
In United Faculty of Florida v. Board of Regents, 365 So.2d 1073 (Fla. 1st DCA 1979), this court held that the legislature’s failure to completely fund a salary contract between the union and the Board of Regents rendered the contract unenforceable to the extent it was not funded. The opinion states: “That the legislature might not provide full funding for the collective bargaining agreement was a contingency well known to the parties before, during, and after negotiations.” 365 So.2d 1078.[4]
We recognize that equitable estoppel may be applied against a government entity when the elements requisite to an estop-pel are present, and where injury which would otherwise result is of sufficient dimension to justify a constitutionally permissible effect upon public interest or policy. Killearn Properties v. City of Tallahassee, 366 So.2d 172, 179 (Fla. 1st DCA 1979), cert. denied, 378 So.2d 343 (Fla.1979).
The record reveals some but not all of the necessary facts to support equitable estoppel.[5] HRS benefited from the contemplated continuity of the contract. SEL relied upon the contract in constructing its plant'in Florida, and in readying itself to perform at the quantity levels conditionally stated in the contract. SEL knew, however, that the contract provided those terms were subject to appropriation in future years, and has agreed that HRS fully performed its obligation to seek full appropriation. Constitutional and statutory provisions mandate separation of powers and *1085 legislative supremacy in the particular context before us. Under these circumstances, HRS cannot be required to pay damages for failure to accept delivery of materials under a contract for which no appropriation was made, when the appropriation act limiting such expenditure has not been invalidated. Equitable estoppel is accordingly inappropriate as to future purchases not funded.
Appellant also seeks review of the trial court’s (1) denial of its motion to compel discovery of SEL’s prospectus and (2) refusal to grant an evidentiary hearing on SEL’s waiver of its attorney/client privilege. We find no merit in the waiver issue but to whatever extent the first issue may be pertinent to proceedings on remand, we conclude the court erred in denying discovery with respect to materials not privileged and relevant to the issue of damages in the pending action. Fla.R.Civ.P. 1.280.
The final judgment is reversed and the cause remanded for further proceedings.
ERVIN and JOANOS, JJ., concur.

. The order on appeal finds "the letter of the law favors" the Department, but:
as neither of the aforementioned defendants nor the Legislature have [sic] demonstrated any exigent financial conditions, recession, depression, or other crises justifying Legislative appropriation for less than the amount specified in the contract, ... the finder of fact should be left to decide whether the defendants should be liable for damages caused by the breach of contract.

. The parties stipulated that at all times the Department "diligently pursued full appropriation from the Legislature" for the purchases originally contemplated. The stipulation also states that the Florida Legislature, by express provisions of the 1984/85 Appropriation Act, prohibited the Department from expending funds for the project in question other than those appropriated for that year at a 163.36 per ton price for 36,500 tons. Appellant presents no direct attack on the validity of this enactment, and the legislature is not, of course, a party to these proceedings.

. The department (H.R.S.) is prohibited from expending funds from any specific appropriation or from any other source except Specific Appropriation 806 for the purchase of 'Fuel, Wood, Refined and Densified’ (wood pellets). The department is specifically limited to an expenditure level of $2,312,640.00 which is sufficient to acquire 36,500 tons of wood pellets at a fiscal year 1984/85 price of $63.36 per ton. The department shall not supplement these funds from any source in the absence of express Legislative authority, (emphasis supplied)

. The opinion there notes the provision in section 447.309(2), Florida Statutes (1975), by which the legislature reserved the right to appropriate "less than the amount requested” to fund the agreement, and provided that when less than the bargained contract amount is appropriated, the "agreement shall be administered ... on the basis of the amounts appropriated....” A comparable provision of general law is that in section 216.311, Florida Statutes, to the effect that “no agency ... shall contract to spend ... any moneys in excess of the amount appropriated to such agency unless specifically authorized by law, and any contract or agreement in violation ... shall be null and void.”

. Our diligent examination of the decisions referenced by the trial judge provides no perceptible parallel to the issue on this appeal: State Road Department of Florida v. Tharp, 146 Fla. 745, 1 So.2d 868 (1941); Killearn Properties, Inc. v. City of Tallahassee, 366 So.2d 172 (Fla. 1st DCA 1979), cert. denied, 378 So.2d 343 (Fla.1979); Pan-Am Tobacco Corp. v. Department of Corrections, 471 So.2d 4 (Fla.1984).