PER CURIAM.
The appellant, Physicians Health Care Plans, Inc. (“PHP”), appeals the entry of a final summary judgment below in its breach of contract claim against the Agency for Health Care Administration (“the Agency”). We reverse and remand for entry of final summary judgment in favor of PHP.
PHP is a licensed health maintenance organization that provides medically necessary services to Medicaid recipients enrolled with PHP. Each year, PHP and the Agency enter into a year-long contract by which the agency agrees to reimburse PHP for these services at a predetermined capitation rate set forth in the contract. The capitation rate is the fixed amount paid each month for each person served. This rate was based upon a discount from the amount the agency projected it would otherwise pay for medical goods and services had the same enrollees received care from fee-for-service providers.[1]
On June 28, 1996, PHP and the Agency entered into a contract for the 1996-97 fiscal year, which is the subject of the instant appeal. The contract was effective from July 1, 1996, through June 30, 1997, and specified a capitation rate of 95% of the fee-for-service rate. The contract thus reflected a 5% discount.
*567 On March 31, 1997, PHP received notice from the Agency that it was unilaterally reducing the capitation rate in its contract with PHP from 95% to 92%, effective the next day, April 1, 1997. The Agency explained in the notice to PHP that it was doing so in order to comply with what it perceived to be the directive of the 1996 legislature in the 1996-97 General Appropriations Act (“the GAA”). It sent a similar letter to each of the health maintenance organizations under contract with the Agency. It then modified PHP’s contract to reflect the new 92% rate, which remained in effect until June 30, 1997, the end of the contract’s term.
PHP then filed a civil action in circuit court against the Agency for breach of contract.[2] After a hearing, the trial court granted summary judgment in favor of the Agency. The court stated: “if there is a legislative mandate that the appropriations be reduced, then [the Agency has] to follow that.” We agree with PHP that the trial court incorrectly applied the law to the facts and thus erred in granting summary judgment in favor of the Agency.
In Florida, contracts between state agencies and private entities are subject to the availability of funds appropriated by the legislature. See Florida Dept. of Health & Rehabilitative Services v. Southern Energy, Ltd., 493 So.2d 1082, 1084 (Fla. 1st DCA 1986) (“Article VII, sec. 1(c), Florida Constitution, provides that no money shall be drawn from the state treasury except pursuant to appropriations made by law. As a corollary to that provision, section 216.311, Florida Statutes, provides that no agency may contract in excess of funds appropriated to it.”). Accordingly, the contract between the Agency and PHP in the present case included a standard “subject to appropriations” clause. However, the Florida Supreme Court has made clear that, once the legislature has funded an agreement, “the state and all its organs are bound by that agreement under the principles of contract law.” See Chiles v. United Faculty of Florida, 615 So.2d 671, 672-73 (Fla.1993); see also State v. Florida Police Benev. Ass’n., 613 So.2d 415, 419 n. 5 (Fla.1992).
Although the Agency contends that the language of the 1996-97 GAA expressly states that the total amount of payment authorized for Medicaid managed care providers was to be reduced by approximately $17.2 million (or 3%), the GAA contains no such statement. Line 258, the pertinent line item, merely provides that the funds in the specific appropriation for prepaid health plans and health maintenance organizations “reflect a reduction from the estimates of the February 1996, Social Service Estimating Conference of $10,800,000 from the General Revenue Fund, $13,628,862 from the Medical Care Trust Fund and $219,882 from the Refugee Assistance Trust Fund.” This amounts to a total savings of approximately $24 million over the amount projected by the Social Service Estimating Conference.[3]
The language of the GAA does not include any express statement or suggestion that the legislature mandated a $17.2 million rate reduction for health maintenance organization services. The Agency’s conclusion that there is a mandate to this effect rests solely on reference to the Agency’s own work papers, which were prepared to assist the legislature in calculating the 1996-97 appropriations. These work papers are not part of the legislation itself.
Although both Florida law and the contract at issue make payment under the agreement subject to availability of funding, the 1996-97 GAA provided such funding for managed care contracts. There were no changes in the amount appropriated for reimbursement to managed care providers after the parties entered into the contract at issue. The 1996-97 GAA, as well as the *568 other laws enacted during that legislative session, were made public in early June of 1996. The Agency did not enter into its 1996-97 contract with PHP until late June of 1996. Therefore, the Agency knew the amount appropriated under the GAA when it prepared its contract with PHP, and that amount never changed after PHP and the Agency entered into the 1996-97 contract. It follows that the Agency could not properly rely on the “subject to funding” clause to avoid liability for breaching the contract.
In sum, the Agency did not prove that there was an actual mandate to reduce rates mid-year (or at all), and, even assuming such a mandate, the amount of the necessary reduction cannot be determined from the language of the GAA. Moreover, even if the mandate and reduction amount were discern-able from the language of the GAA, the Agency was aware of the available funding at the time it entered into the contract for a full fiscal year with PHP. Although it could have set the terms of the contract to accommodate the supposed legislative mandate, it chose not to do so. Instead, the Agency contracted with PHP for a set capitation rate for a full year and later breached the contract by unilaterally modifying the rate. For these reasons, we conclude that the trial court erred in granting summary judgment in favor of the Agency.
Both parties agreed at the hearing that there were no disputed issues of material fact remaining and that the case was appropriate for disposition by summary judgment. Therefore, we reverse and remand for entry of summary judgment in favor of PHP.
Reversed and Remanded.
ERVIN, BENTON and PADOVANO, JJ., concur.

. At the time of the contract, the method and amount of reimbursement for Medicaid managed care plans was not specifically established by statute.

. PHP alleged damages in the form of a decline in reimbursement collected between April 1, 1997 (the effective date of the rate reduction) and June 30, 1997 (the expiration date of its contract with the Agency).

. The amount projected by the Social Service Estimating Conference serves as a base line amount for the eventual calculation of appropriations by the legislature. The appropriations committee works with the figures provided by the Conference in work papers, adjusts it, and specifies the final amount appropriated by the legislature in the GAA.