# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D18-10
_____

NORTHWOOD ASSOCIATES, LLC,

 Appellant,

 v.

MICHAEL ERTEL, in his official capacity as Secretary of State, ERIN ROCK, in her official capacity as Secretary of Management Services, HALSEY BESHEARS, in his official capacity as Secretary of Department of Business and Professional Regulation, CHAD POPPELL, in his official capacity as Secretary of Department of Children and Families, KEN LAWSON, in his official capacity as Executive Director of Department of Economic Opportunity, JASON M. ALLISON, in his official capacity as State Chief Information Officer, RICHARD CORCORAN, in his official capacity as the Commissioner of Education, DEPARTMENT OF STATE, DEPARTMENT OF MANAGEMENT SERVICES, DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION,

DEPARTMENT OF CHILDREN AND
FAMILIES,
AGENCY FOR STATE
TECHNOLOGY, the FLORIDA
HOUSE OF REPRESENTATIVES,
and ML-CFC 2007-9
NORTH MONROE STREET,

     Appellees.

_____

On appeal from the Circuit Court for Leon County.
Karen Gievers, Judge.

January 22, 2019

LEWIS, J.

Appellant, Northwood Associates, LLC, appeals a final judgment entered in favor of Appellees and argues that the trial court erred in rejecting its claims that legislative proviso language prohibiting any state funds from being used to pay it for leases it had with several state agencies violated the Florida Constitution's prohibition against the impairment of contracts and the single subject rule. For the following reasons, we reject Appellant's arguments and affirm.

## FACTUAL AND PROCEDURAL HISTORY

As found by the trial court, Appellant had two leases with three state executive branch agencies – the Department of Management Services ("DMS"), the Department of Children and Families ("DCF"), and the Agency for State Technology ("AST") – for office space at Northwood Centre.[1] In early March 2016, in

_____

[1] Although not relied upon by the trial court in ruling upon the parties' competing summary judgment motions, evidence presented below by Appellees in response to Appellant's summary judgment motion described many of the issues that state

considering the appropriation for various agencies, the Legislature provided the tenant agencies with requested rent money but added a proviso prohibiting them and the Department of Education ("DOE"), "a Northwood tenant until 2009," from paying any of the appropriated funds to Appellant. Following the legislative action and before the end of March 2016, the tenant agencies gave notice to Appellant that they would be moving out June 30, 2016, due to the Legislature not having provided the funding needed for rent.

The proviso language at issue as to DMS set forth:

No funds are appropriated in Specific Appropriations 2684 through 2845 for the payment of rent, lease or possession of space for offices or any other purpose or use at Northwood Centre, 1940 North Monroe Street, Tallahassee, Florida, pursuant to State of Florida Lease No. 720:0139, or any other lease, on behalf of any department or agency of the State of Florida by the Department of Management Services, notwithstanding any lease or contract to the contrary. [DMS] is prohibited from expending any specific appropriation from the General Revenue Fund, any trust fund or from any other source for the rent, lease or possession of any space for

_____

employees faced while working at the leased premises. For instance, a May 2015 report found loose fiberglass particulates, very heavy, widespread active mold growth on duct systems, and highly elevated endotoxin concentrations in flooring materials. A July 2015 report "revealed severe and dangerous conditions at the Northwood Centre similar to those reflected in [the] May 27, 2015, report." An October 2015 report found similar conditions. Assessments in March and April 2016 confirmed the presence of extensive microbial contamination throughout leased offices and that the areas "were demonstrably impacted by bacterial endotoxins in the carpet and active mold growth in the vast majority of HVAC systems." Cryptococcus found in samples collected from some HVAC systems raised concerns of pathogenic exposures, and at least one employee suffered from a lung infection caused by the fungus. The leased premises also had issues with bat guano, sewage, and insects.

offices or other purpose or use at Northwood Centre . . . pursuant to State of Florida Lease No. 720:0139, or any other lease.

The proviso language was virtually identical as to the Department of Business and Professional Regulation, DCF, AST, DOE, the Department of Revenue, and the Department of State. The proviso language for the Department of Economic Opportunity excluded "State of Florida Lease No. 400:0070" from the prohibition.

In Count I of its Amended Complaint against Appellees, Appellant sought a declaratory judgment and injunctive relief, alleging that because the Legislature appropriated funds at the request of the various lessees to fund the leases, the proviso was an "unconstitutional impairment of the Northwood Centre Leases, or any other lease agreement by the state for space within the Northwood Centre, in violation of Article I, Section 10 of the Florida Constitution." In Count II, Appellant sought a declaratory judgment and injunctive relief, alleging that the proviso was invalid because "it violates the single subject requirements of Article 3, section 12 of the Florida Constitution." Counts III and IV were breach of contract claims that Appellant later voluntarily dismissed. Attached to the Amended Complaint was DMS's Lease Agreement with Appellant's predecessor-in-interest, which had an availability of funds provision stating, "The State of Florida's performance and obligation to pay under this contract is contingent upon an annual appropriation by the Legislature. F.S. 255.2502."[2]

_____

[2] Section 255.2502, Florida Statutes (2017), provides in part:

No executive branch department or agency, public officer or employee shall enter into any contract on behalf of the state, which contract binds the state or its executive agencies to the lease, rental . . . of office space . . . for a period in excess of 1 fiscal year unless the following statement is included in the contract: "The State of Florida's performance and obligation to pay under this contract is contingent upon an annual appropriation by the Legislature."

4

Thereafter, Appellant filed a motion for summary judgment as to Counts I and II. Appellees also filed motions for summary judgment as to those counts. In the Order Denying Plaintiff's Motion for Summary Judgment as to Counts I and II and Granting Defense Motions as to Counts I and II, the trial court set forth in part:

> 1. The plaintiff's motion for entry of final summary judgment as to counts I and II is denied; the Court is bound by the district court ruling in Benson v. State of Florida, 194 So.3d 1048 (Fla. 1st DCA 2016).

> 2. The motions of the tenants, DOE and the House for summary judgment against [Appellant] as to counts I and II are granted; the Court is bound by the district court ruling in Benson; supra.

The trial court subsequently entered a Final Judgment in favor of Appellees. This appeal followed.

ANALYSIS

*Application of Benson*

A trial court's order granting final summary judgment is reviewed de novo to determine whether there are genuine issues of material fact and whether the court properly applied the correct rule of law. *Glaze v. Worley*, 157 So. 3d 552, 553-54 (Fla. 1st DCA 2015); *see also Castleberry v. Edward M. Chadbourne, Inc.*, 810 So. 2d 1028, 1029 (Fla. 1st DCA 2002) ("Summary judgment is appropriate if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law."). The interpretation of a constitutional provision is also a question of law reviewable de novo. *Fla. Dep't of Revenue v. City of Gainesville*, 918 So. 2d 250, 256 (Fla. 2005).

Appellant first argues on appeal that the trial court erred in relying upon *Benson v. State, Department of Corrections*, 194 So. 3d 1048 (Fla. 1st DCA 2016). There, the appellants appealed a summary judgment order entered in favor of the appellee that concluded that the appellee did not breach a lease for office space

5

owned by the appellants. *Id*. at 1049. In 2007, the appellee agreed to lease office space from the appellants for a term extending through 2015. *Id*. In accordance with section 255.2502, the lease included a provision making the appellee's "performance and obligation to pay under [the] contract ... contingent upon an annual appropriation by the Legislature." *Id*. The parties' relationship proceeded relatively smoothly until fiscal year 2011-2012 when the Legislature cut the appellee's funding for leases by more than $1 million and included a proviso prohibiting the appellee from paying rent for leased property "vacant on or after July 1, 2011, and for which it has been determined by the Secretary of the department that there is no longer a need." *Id*. at 1049-50. The appellee responded to the cuts by assembling a task force to identify the unnecessary leases, which recommended consolidating the Palm Bay office leased from the appellants. *Id*. at 1050. The appellee then undertook to relocate its staff and equipment from the Palm Bay office. *Id*. Once the appellee completed the move, it notified the appellants that the "Secretary of the Department of Corrections has determined the space is no longer needed." *Id*. After the appellee ended its lease, the appellants filed suit, alleging that the appellee had breached the lease and that the legislative proviso violated the Florida Constitution. *Id*. The appellee successfully moved for summary judgment. *Id*.

The appellants argued on appeal as follows: (1) the trial court erred in granting summary judgment as the proviso unlawfully impaired their contractual rights; (2) summary judgment was entered in error because the Legislature unlawfully delegated its legislative authority to the appellee in the proviso; (3) summary judgment was improper because the appellee breached the contract; (4) reversal was warranted even if the proviso was valid because the appellee applied it in a constitutionally defective manner; and (5) the proviso as applied violated the single subject rule. We rejected the arguments, finding that the central issue in the appeal was whether the availability of funds provision excused the appellee's obligation to perform after April 2012. *Id*. Under the circumstances present in the case, we concluded that the appellee did not breach its lease because the availability of funds provision excused it from its obligation to pay and perform. *Id*. As for the appellants' constitutional claims, we set forth, "Finally, we find no merit in the Bensons' various other arguments that the

6

proviso and the Department's actions violated the Florida Constitution." *Id.*

Appellant argues that this case is distinguishable from *Benson* because, unlike in that case where there was a budget reduction, the Legislature fully funded the tenant agencies' lease obligations but prohibited any payment to Appellant. We find this, however, to be a distinction without a difference. In *Benson*, the agency was prohibited from paying rent for certain leased property. Similarly, in this case, the proviso prohibited the tenant agencies from paying rent for certain leased property. As the supreme court has explained, "The state may not employ state funds unless such use of funds is made pursuant to an appropriation by the Legislature." *Am. Home Assurance Co. v. Nat'l R.R. Passenger Corp.*, 908 So. 2d 459, 474 (Fla. 2005). Article VII, section 1(c) of the Florida Constitution, which provides that "[n]o money shall be drawn from the treasury except in pursuance of appropriation made by law," "secures to the Legislature (except where the Constitution controls to the contrary) the exclusive power of deciding how, when, and for what purpose the public funds shall be applied in carrying on the government." *Id.* at 474-75 (quoting *State ex rel. Kurz v. Lee*, 163 So. 859 (1935)). Based upon the foregoing, we find no merit in Appellant's argument that the trial court erred in relying upon *Benson* when rejecting its constitutional challenges to the proviso. However, even if *Benson* was not controlling, rejection of Appellant's arguments would still be warranted.

*Impairment of Contract Claim*

Appellant contends that the proviso violates article I, section 10 of the Florida Constitution's prohibition against laws impairing contracts. The supreme court has explained that "[t]o impair a preexisting contract, a law must 'have the effect of rewriting antecedent contracts' in a manner that 'chang[es] the substantive rights of the parties to existing contracts.'" *Searcy, Denney, Scarola, Barnhart & Shipley v. State*, 209 So. 3d 1181, 1192 (Fla. 2017). An impairment may be constitutional if it is reasonable and necessary to serve an important public purpose. *Id.*

In support of its argument, Appellant cites *Chiles v. United Faculty of Florida*, 615 So. 2d 671, 672 (Fla. 1993), where various

7

public employee unions challenged the Legislature's decision to eliminate pay raises that it had previously authorized. In ruling in favor of the unions and noting that the State was clearly a party to the contract, the supreme court set forth in part, "Once the executive has negotiated and the legislature has accepted *and* funded an agreement, the state and all its organs are bound by that agreement under the principles of contract law. The act of funding through a valid appropriation is the point in time at which the contract comes into existence." *Id.* at 672-73. In *Searcy, Denney, Scarola, Barnhart & Shipley*, another case relied upon by Appellant, the supreme court stated that "once that [legislative] discretion has been exercised by enactment of a claims bill awarding payment of all or part of an excess judgment for damages . . ., the Legislature may not impair the preexisting contract rights of the parties for attorneys' fees as occurred by the fee and cost limit imposed in the claims bill in this case." 209 So. 3d at 1195.

As Appellees point out, Appellant's reliance upon *Chiles* and *Searcy* is misplaced as neither dealt with leases entered into by state agencies and an availability of funds clause. Moreover, while Appellant makes the general argument that no valid contract exists where one party retains the option of fulfilling or declining to fulfill its obligations under the contract, this is not a situation where the leases gave the tenant agencies the choice to abandon their contractual obligations. Instead, this is a situation where Appellant chose to enter into the lease agreements that were contingent upon legislative appropriation. As a result of doing so, Appellant was never guaranteed that the leases would be funded for each of the years in question. In addition, Appellant's argument that there was no legitimate public purpose behind the proviso ignores the situation that many state employees faced while working at the leased premises. This was not, contrary to Appellant's contention, a scenario where the Legislature indiscriminately chose to target certain agency leases.

Appellant also argues that article I, section 10 would prohibit the Legislature from passing a general law saying that "[a]ll contracts for lease of space at Northwood Centre are terminated" and that the Legislature should not be permitted to do indirectly what it cannot do directly. The difference between the two scenarios, however, is that the Legislature is the state entity

8

holding the power to appropriate funds. *See State v. Fla. Police Benevolent Ass'n*, 613 So. 2d 415, 418-19 (Fla. 1992) (noting that the Legislature has the exclusive right to appropriate funds).

In *Florida Department of Health and Rehabilitative Services v. Southern Energy, Ltd.*, 493 So. 2d 1082, 1082 (Fla. 1st DCA 1986), the appellant agency sought review of a final judgment that found liability for breach of contract and contended that the trial court erred in invoking equity to circumvent a "subject to appropriation" clause in the contract. We reversed, noting that the contract between the parties made purchases for future years contingent on legislative appropriation. *Id.* We noted that the Legislature alone has power to appropriate funds and that the appellee had unequivocal notice that the contract was subject to appropriation "for future years." *Id.* at 1084. Here, as stated, Appellant was on notice that the continuation of the leases was subject to legislative appropriation. Therefore, we reject Appellant's argument that the Legislature's decision not to appropriate money for the leases constituted a contractual impairment. The Legislature neither rewrote the leases nor altered the parties' rights under the leases.

*Single Subject Claim*

Appellant next contends that the proviso violates the single subject provision of article III, section 12 of the Florida Constitution, which provides, "Laws making appropriations for salaries of public officers and other current expenses of the state shall contain provisions on no other subject." As part of the Legislature's authority to enact appropriations and reasonably direct their use, it may attach qualifications or restrictions to the use of appropriated funds. *Brown v. Firestone*, 382 So. 2d 654, 663 (Fla. 1980). In accordance with article III, section 12, a general appropriations bill must deal only with appropriations and matters properly connected therewith. *Id.* The first of two major considerations underlying the one-subject requirement is the need to prevent logrolling in appropriations bills. *Id.* The second reason behind the requirement is to ensure the integrity of the legislative process in substantive lawmaking. *Id.* at 664. "Our state constitution demands that each bill dealing with substantive matters be scrutinized separately through a comprehensive

9

process which will ensure that all considerations prompting legislative action are fully aired." *Id.* Given such, appropriations bills "must not change or amend existing law on subjects other than appropriations." *Id.* Article III, section 12 "will countenance a qualification or restriction only if it directly and rationally relates to the purpose of an appropriation and, indeed, if the qualification or restriction is a major motivating factor behind enactment of the appropriation." *Id.*

In support of its single subject argument, Appellant relies in part upon *Florida Pharmacy Association v. Lindner*, 645 So. 2d 1030, 1031 (Fla. 1st DCA 1994), wherein we reviewed a judgment declaring an appropriations proviso unconstitutional and held in part, "[W]e conclude that the effect of the subject proviso was to impermissibly alter or modify existing substantive law concerning the procurement of cost-efficient health insurance benefits for State of Florida employees." *Id.* at 1032. Specifically, the legislative directive encompassed within the proviso was found by this Court to essentially nullify the competitive procurement requirements found within section 110.123, Florida Statutes, and, thus, tacitly amend existing law. *Id.* As such, we affirmed. *Id.* at 1033.

Appellant also relies upon *Department of Education v. Lewis*, 416 So. 2d 455, 459 (Fla. 1982), where the proviso at issue provided that no appropriated funds could be used to finance any state-supported public or private postsecondary education institutions that chartered or gave official recognition or assistance to or provided meeting facilities for any group or organization that recommended or advocated sexual relations between persons not married to each other. In holding that the proviso violated article III, section 12 of the Florida Constitution, the supreme court set forth, "[T]he proviso attempts to make substantive policy on the governance of postsecondary educational institutions. Thus, it amends a whole host of statutes pertaining to the operation of public colleges and universities and the regulation of private colleges and universities." *Id.* The supreme court also determined that the proviso was not directly and rationally related to the appropriation of state funds to postsecondary institutions and students but was instead designed to further a legislative objective unrelated to such funding. *Id.*

10

The factual situation involved in this case is far different from *Lindner* and *Lewis*. The Legislature did not alter substantive law in this case as it was found to have done in *Lindner*. Nor is the situation in this case one where the Legislature was attempting to make substantive policy in an appropriations bill as was done in *Lewis*. Instead, the Legislature chose not to appropriate money to certain leases because of the conditions at the leased premises, which is something that it was statutorily authorized to do.

Appellant also cites section 255.249(4), Florida Statutes, which governs the lease of space by state agencies and directs DMS "to the extent feasible, [to] coordinate the vacation of privately owned leased space with the expiration of the lease on that space" and "when a lease is terminated before expiration of its base term, [it] will make a reasonable effort to place another state agency in the space vacated." As Appellees contend, however, in a situation where it is the conditions of the leased premises that caused the termination of the lease, it would not be feasible or reasonable for DMS to place another state agency in the "space vacated."

Appellant next argues that the proviso is not rationally related to or a major motivating factor for the underlying appropriations. According to Appellant, the proviso furthers an alternative legislative objective wholly unrelated to the funding of the tenant agencies. However, Appellant fails to explain how the legislative objective, which was to stop using state funds for the premises at issue given the conditions therein, was unrelated to the funding of the tenant agencies. Indeed, the legislative objective was entirely related to funding the tenant agencies' rental needs. *See Div. of Admin. Hearings v. Sch. Bd. of Collier Cty*, 634 So. 2d 1127, 1129 (Fla. 1st DCA 1994) ("The Florida Constitution's mandate that appropriations bills 'contain provisions on no other subject' requires only that the appropriations bill not amend existing law on subjects other than appropriations, and that a qualification or restriction rationally relate to the purpose of the appropriation. . . . The provisos concern only the appropriations process and related budgeting mechanisms.")

Appellant lastly contends that the legislative process surrounding the addition of the proviso further supports the

conclusion that the single subject requirement was violated. Appellant points to the fact that the proviso was added "late" in the 2016-2017 budget conference process. As Appellant points out, the supreme court has reviewed legislative history in determining whether the Legislature violated the single subject requirement. *See State v. Thompson*, 750 So. 2d 643, 648 (Fla. 1999) ("Further, a review of the legislative history surrounding chapter 95-182 supports a finding that the chapter law does not meet the requirements of the single subject rule."). However, in *Thompson*, the supreme court found it clear that certain sections in a chapter law addressed two different subjects – career criminals and domestic violence. *Id.* Here, in contrast, the proviso, which specifically addresses appropriations, was included within the general appropriations law. Moreover, in *Environmental Confederation of Southwest Florida, Inc. v. State, Department of Environmental Protection*, 886 So. 2d 1013, 1014-15 (Fla. 1st DCA 2004), we noted *Thompson* in addressing a single subject challenge but set forth:

> The doctrine of separation of powers as well as mutual respect for an equal branch of government require this court to read the language in . . . *Thompson* as standing for the proposition that legislative history may provide some support for determining that an act that is questionable on its face may be unconstitutional. Such legislative history, however, is not an independent reason for determining that a violation of the single subject rule has occurred. . . . Thus, as our supreme court has wisely stated in the past, it is the court's job to review the final product of the legislature rather than its internal operating procedures.

*See also Corcoran v. Geffin*, 250 So. 3d 779, 785 (Fla. 1st DCA 2018) ("[A]sking the trial court to find that the Legislature was constitutionally required to appropriate specific funds for a specific purpose is akin to asking the court to dictate appropriations."); *Browning v. Fla. Prosecuting Attorneys Ass'n*, 56 So. 3d 873, 874-75 (Fla. 1st DCA 2011) (reversing the trial court's determination that the budgetary proviso, which prohibited the payment of Florida Bar dues from funds appropriated to state agencies, was unconstitutional, where the proviso did not conflict with Florida

law). In reviewing the proviso, or the Legislature's "final product," we find no violation of the single subject requirement.

CONCLUSION

For the reasons expressed herein, we reject Appellant's constitutional arguments. The trial court did not err in entering judgment in favor of Appellees in this case. We, therefore, affirm the Final Judgment.

AFFIRMED.

RAY and M.K. THOMAS, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____


J. Michael Huey, D. Ty Jackson, and George T. Levesque of GrayRobinson, P.A., Tallahassee, for Appellant.

Ashley Brooke Moody, Attorney General; Amit Agarwal, Solicitor General; Rachel Nordby, Senior Deputy Solicitor General; Edward M. Wenger, Chief Deputy Solicitor General, Tallahassee, for Appellees Department of Management Services, Department of Business and Professional Regulation, Department of Children and Families, Department of Economic Opportunity, and Agency for State Technology.

James L. Richmond, Assistant General Counsel, Florida Department of Education, Tallahassee, for Appellee Richard Corcoran.

Adam S. Tanenbaum, General Counsel, Tallahassee, for Appellee Florida House of Representatives.

13