DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

KMG PROPERTIES, LLC,

Appellant,

v.

OWL CONSTRUCTION, LLC,

Appellee.

No. 2D2023-1769

_____

April 24, 2024

Appeal pursuant to Fla. R. App. P. 9.130 from the Circuit Court for Pinellas County; Patricia A. Muscarella, Judge.

Richard A. Harrison of Richard A. Harrison, P.A., Tampa, for Appellant.

Richard J. Boyle of The Boyle Law Firm, Wellington, for Appellee.

LaROSE, Judge.

KMG Properties, LLC, appeals an order vacating its default judgment against Owl Construction, LLC. The trial court found that KMG failed to properly serve Owl. As a result, the trial court found the judgment to be void. We have jurisdiction. *See* Fla. R. App. P. 9.130(a)(5). We reverse.

**Background**

KMG bought a condominium unit. At the time, Owl was performing significant renovations, to the tune of $125,000, to the unit.

KMG discovered several deficiencies.  Allegedly, Owl's building permit had expired, the permit was for limited work totaling only $30,000, Owl's work was replete with building code violations, and no one had inspected Owl's work.  KMG fired Owl and hired another contractor to finish the work.

In response, Owl recorded a construction lien against the condo unit.  KMG promptly sued Owl, seeking to discharge the lien.  The verified return of service describes how KMG effected service:

Received by BOLTER & CARR INVESTIGATIONS, INC. on the Tuesday, March 28, 2023 at 8:46:14 AM to be served on OWL CONSTRUCTION LLC., BY SERVING JACQUELINE M ROJAS-QUINOONES RA, 7121 N HABANA AVE.. TAMPA, FL 33614.

I, JAMES D. WOODS, do hereby affirm that on the **Tuesday, March 28, 2023 at 10:00 AM**, I:

Served the within named corporation by delivering a true copy of the **20 DAY SUMMONS, COMPLAINT TO SHOW CAUSE AND DISCHARGE CONSTRUCTION LIEN PURSUANT TO FLA STAT 713.21(4) EXHIBITS** with the date and hour of service endorsed thereon by me to YUNI FEBLES as ADMINISTRATIVE ASSISTANT/AUTHORIZED TO ACCEPT of the within named corporation, and informed said person of the contents therein, in compliance with State Statutes.
**Comments pertaining to this service:** YUNI FEBLES WENT BACK AND SPOKE WITH THE R.A. WHO AUTHORIZED HER TO ACCEPT THE SUMMONS ON REGISTERED AGENTS BEHALF.

Owl did not respond to the complaint.  *See* § 713.21(4), Fla. Stat. (2023).  KMG obtained a clerk's default.  Later, the trial court entered a default judgment against Owl.

Owl moved to set aside the default judgment. Owl claimed that KMG did not properly effect service of process. Under section 48.062(2), Florida Statutes (2023),[1] "[a] domestic limited liability company . . . may be served with process required or authorized by law by service on its registered agent." Of course, Yuni Febles was not the registered agent. Owl also observed that section 48.091(4) provides that "[a] person attempting to serve process pursuant to this section on a natural person, if the natural person is temporarily absent from his or her office, may serve the process during the first attempt at service on any employee of such natural person." Owl contended that Ms. Febles was not employed by the registered agent. Finally, Owl claimed that Ms. Rojas-Quinones never authorized anyone to accept service for her. Therefore, according to Owl, the trial court lacked personal jurisdiction over Owl.

The trial court held a hearing on Owl's motion. James Woods, the process server, testified. His testimony was consistent with his narrative on the verified return of service. Mr. Woods testified that at 10:00 a.m. on March 28, 2023, he entered Owl's registered address to serve process upon Ms. Rojas-Quinones. Upon his arrival, he encountered Ms. Febles, whose desk was located near the office entrance.[2] Mr. Woods identified

---

[1] Shortly before the events underlying this appeal occurred, the legislature overhauled Florida's service of process laws. *See* ch. 2022-190, § 36, Laws of Fla. (providing an effective date of January 2, 2023). Commentators have observed that "[t]he legislation . . . simplifies, clarifies, and modernizes the manner of service of process on business entities." Giacomo Bossa & James B. Murphy, *Recent Legislative Changes to Service of Process: A New Ball Game?*, Fla. Bar. J., May/June 2023, at 39.

[2] Apparently, Owl's registered address was a residence that had been converted to commercial office space. Owl shares this repurposed space with other business entities, for whom Ms. Rojas-Quinones serves

himself as a process server and asked for Ms. Rojas-Quinones. "Ms. Febles said that [Ms. Rojas-Quinones] is here, but she [i]s busy." Mr. Woods told Ms. Febles that he was there concerning "a corporate matter for the company, and [Ms. Rojas-Quinones i]s the registered agent, and that I should serve her." Ms. Febles responded that "she was authorized to accept legal papers on behalf of the company." Leery about leaving the legal papers with Ms. Febles, Mr. Woods asked her to "go back and clear that with [Ms. Rojas-Quinones], and she did. [Ms. Febles] came back and said she was authorized." Mr. Woods served Ms. Febles with process. Mr. Woods admitted that he never saw Ms. Rojas-Quinones that day.

Ms. Rojas-Quinones also testified. Her testimony was inconsistent with that of Mr. Woods. Ms. Rojas-Quinones testified that she is Owl's Chief Executive Officer and registered agent. She denied authorizing anyone to accept service on her behalf. Ms. Rojas-Quinones testified that Ms. Febles had worked for the previous ten years as a "1099-contractor" with Accounting and Beyond, LLC. Ms. Febles was a "bookkeeper, receptionist, and appointment-setter." Ms. Rojas-Quinones admitted that she and Ms. Febles were present at Owl's registered address on the date of service. She repeated that she was not personally served. In fact, she remembered seeing Mr. Woods for the first time several days later when he served process upon her as Owl's registered agent in another case.[3]

as registered agent. For instance, on the date of service, Ms. Rojas-Quinones was the registered agent for Accounting and Beyond, LLC.

[3] Our record reflects that a default judgment was entered against Owl in this other case, despite Ms. Rojas-Quinones having been personally served with process.

Interestingly, she could not remember telling Ms. Febles that she could accept service. Yet, she later insisted that she never told Ms. Febles to accept service on her behalf. Ms. Rojas-Quinones also denied that Ms. Febles "c[a]me back to where [she] w[as] and sa[id] anything to [her] about a process server being there." Then, she equivocated, explaining that she "d[id]n't recall [Ms. Febles] ever telling me a process server was there." Ms. Rojas-Quinones mentioned that Ms. Febles was no longer with Accounting and Beyond. Because "[s]he's no longer working here," Ms. Rojas-Quinones did not secure an affidavit from her.

After receiving written closing arguments and proposed orders, the trial court vacated the default judgment. The trial court noted that Mr. Woods neither saw nor heard Ms. Rojas-Quinones and did not "hand[] the Registered Agent, [Ms. Rojas-Quinones] the relevant papers for service of process." The trial court found Ms. Rojas-Quinones' testimony credible and unchallenged.

The trial court explained that because the return of service "did not indicate that substitute service was effectuated," the verified return was "not regular on its face." Consequently, the trial court reasoned, KMG "lost the presumption that the return of service was valid and the burden to prove valid service [remained] with [KMG]." According to the trial court, KMG failed to carry its burden.

## Analysis

"A judgment is void when it is entered by a court lacking jurisdiction . . . over the person of the defendant . . . ." *State Farm Mut. Auto. Ins. Co. v. Statsick*, 231 So. 3d 528, 531 (Fla. 2d DCA 2017). Importantly, service of process statutes are strictly construed and enforced to ensure that liberty and property interests are not impacted without due process of law. *Cf. Standley v. Arnow,* 13 Fla. 361, 365–66

(Fla. 1869) ("The doctrine that no person shall be deprived of property unless by due process of law, reiterated in all American constitutions, gives every person the right to demand that the law shall be strictly complied with in all proceedings which may affect his title to his property.").

We review de novo the trial court's finding that the default judgment is void due to improper service. *Regions Bank v. Big Bend Invs. Grp. of Fla., LLC*, 311 So. 3d 181, 184 (Fla. 2d DCA 2020) ("Determining whether a judgment is void poses a question of law that we review de novo."). We also review the trial court's interpretation of the service of process statutes de novo. *See State v. Waiters*, 347 So. 3d 533, 536 (Fla. 2d DCA 2022) ("Judicial interpretations of statutes are pure questions of law subject to de novo review." (quoting *Johnson v. State*, 78 So. 3d 1305, 1310 (Fla. 2012))).

Seemingly, the trial court saw two flaws in the service of process. First, the trial court perceived a deficiency in form. Second, the trial court found the manner of service was improper. *See generally Robles-Martinez v. Diaz, Reus & Targ, LLP*, 88 So. 3d 177, 180 (Fla. 3rd DCA 2011) ("There is a significant difference between a facially defective return of service (for example, a return which, on its face, fails to contain the information required by statute) and an invalid service of process (for example, a claim that the residence where service was effectuated was not the defendant's usual place of abode)." (footnote omitted)). We conclude that the verified return of service was regular on its face and that Owl failed to present clear and convincing evidence that the service of process was improper.

## I. The (Regular) Verified Return of Service

The trial court's error in finding that the verified return of service was irregular had a cascading effect; it infected the trial court's downstream findings. The verified return of service is the whole ball of wax before us. After all, "[t]he return of service is the instrument a court relies on to determine whether jurisdiction over an individual has been established." *Koster v. Sullivan*, 160 So. 3d 385, 388 (Fla. 2015).

Section 48.21(1) defines valid return of service:

> Each person who effects service of process shall note on a return-of-service form attached thereto the date and time when it comes to hand, the date and time when it is served, the manner of service, the name of the person on whom it was served, and, if the person is served in a representative capacity, the position occupied by the person. The return-of-service form must list all pleadings and documents served and be signed by the person who effects the service of process. However, a person who is authorized under this chapter to serve process and who effects such service of process may sign the return-of-service form using an electronic signature.

Discussing this language, our supreme court observed that a valid return of service includes:

> (1) the date and time that the pleading comes to hand or is received by the process server, (2) the date and time that process is served, (3) the manner of service, and (4) the name of the person served and, if the person is served in a representative capacity, the position occupied by the person.

*Koster*, 160 So. 3d at 389.

KMG satisfied these requirements. The verified return of service recounted the date and time that Mr. Woods received and served the summons and complaint. It recited that Mr. Woods left the court papers with Ms. Febles, who told him that Ms. Rojas-Quinones authorized her to accept service.

## II. Manner of Service, Ms. Febles, and Section 48.091(3) (not (4))

7

Owl argues that "the manner of service, substitute service, was not indicated on the return anywhere and thus, the return of service was facially deficient." Owl also tells us that because Ms. Febles was not an Owl employee, service was defective. *See* § 48.091(4) ("A person attempting to serve process pursuant to this section on a natural person, if the natural person is temporarily absent from his or her office, may serve the process during the first attempt at service on any *employee* of such natural person." (emphasis added)). We are unpersuaded.

Section 48.091 tells us how to serve limited liability companies. To that end, section 48.091(3) explains the duties of the registered agent.

> Every . . . domestic limited liability company . . . shall cause the designated registered agent to keep the designated registered office open from at least 10 a.m. to 12 noon each day except Saturdays, Sundays, and legal holidays, and shall cause the designated registered agent to keep one or more individuals who are, or are representatives of, the designated registered agent on whom process may be served at the office during these hours.

Indisputably, Ms. Rojas-Quinones was Owl's registered agent. Also undisputed, service was made during the statutorily required times.

Although the registered agent must "keep one or more individuals who are, or are representatives of, the designated registered agent on whom process may be served at the office during these hours," the statute does not require that the registered agent employ these "individuals." *Compare* § 48.091(3), *with* 48.091(4) ("A person attempting to serve process pursuant to this section on a natural person, if the natural person is temporarily absent from his or her office, may serve the process during the first attempt at service on any *employee* of such natural person." (emphasis added)). This fact is no trifling matter. *See City of Bartow v. Flores*, 301 So. 3d 1091, 1096 (Fla. 1st DCA 2020) ("[T]he Legislature's use of differing language in the same statute is a sign

8

the Legislature intended varied meanings."); *Carlson v. State*, 227 So. 3d 1261, 1267 (Fla. 1st DCA 2017) ("We typically view the Legislature's use of varied language in the same statute as a sign the Legislature intended varied things."). Based on his narrative on the return of service, Mr. Woods properly effected service under section 48.091(3).

Owl's reliance on section 48.091(4) is misplaced for another reason. Ms. Rojas-Quinones was present when Mr. Woods attempted service. According to Mr. Woods, Ms. Rojas-Quinones was busy and did not wish to be disturbed. So, she authorized Ms. Febles to accept process on her behalf. On these facts, Ms. Rojas-Quinones was not "temporarily absent" from the office. *See Absent*, Merriam-Webster Dictionary Online, https://www.merriam-webster.com/dictionary/absent (last visited Feb. 29, 2024) (defining "absent" as "not present at a usual or expected place"). By its own language, subsection (4) only applies if the registered agent "is temporarily absent from his or her office" in which case the "person attempting to serve process . . . may serve the process during the first attempt at service on any employee of such natural person." § 48.091(4). Ms. Rojas-Quinones' unwillingness or inability to accept service does not render her "absent" under section 48.091(4).

## III. Interpreting the Service of Process Statutes

"The interpretation of a statute begins 'with the plain meaning of the actual language' the statute employs." *Nat'l Auto Serv. Ctrs., Inc. v. F/R 550, LLC*, 192 So. 3d 498, 504 (Fla. 2d DCA 2016) (quoting *Diamond Aircraft Indus., Inc. v. Horowitch*, 107 So. 3d 362, 367 (Fla. 2013)). It is beyond cavil that "legislative intent is determined primarily from the statute's text." *Heart of Adoptions, Inc. v. J.A.*, 963 So. 2d 189, 198 (Fla. 2007). "When the statute is clear and unambiguous, courts will not look behind the statute's plain language for legislative intent or resort to rules

9

of statutory construction to ascertain intent. In such instance, the statute's plain and ordinary meaning must control . . . ." *Daniels v. Fla. Dept. of Health*, 898 So. 2d 61, 64 (Fla. 2005).

Owl insists that "a domestic limited liability company . . . be served with process . . . by service on its registered agent." § 48.062(2). By Owl's telling, this is the only way to effect service. However, we should not read different parts of the same statutory scheme in isolation. *See GTC, Inc. v. Edgar*, 967 So. 2d 781, 787 (Fla. 2007) ("It is axiomatic that all parts of a statute must be read *together* in order to achieve a consistent whole." (quoting *Forsythe v. Longboat Key Beach Erosion Control Dist.*, 604 So. 2d 452, 455 (Fla. 1992))); *Forsythe*, 604 So. 2d at 455 ("Where possible, courts must give full effect to *all* statutory provisions and construe related statutory provisions in harmony with one another."). To that end, our supreme court recently reiterated that "[t]he doctrine of *in pari materia* is a principle of statutory construction that requires that statutes relating to the same subject or object be construed together to harmonize the statutes and to give effect to the Legislature's intent." *1944 Beach Boulevard, LLC v. Live Oak Banking Co.*, 346 So. 3d 587, 593 (Fla. 2022) (quoting *Fla. Dep't of State v. Martin*, 916 So. 2d 763, 768 (Fla. 2005)); *e.g.*, *Nirk v. Bank of Am., N.A.*, 94 So. 3d 658, 659 (Fla. 4th DCA 2012) (reading different sections of the same chapter together to ascertain whether a process server must place the statutorily-required notations on only the copy of the summons served, and not on the copy of the complaint served).

We read section 48.062(2) *in pari materia* with section 48.091(3). The former authorizes service on a limited liability company by service directly on the registered agent. The latter, broader in scope, allows

service on "individuals who are . . . representatives of . . . the designated registered agent."

Owl ignores a cardinal rule of statutory interpretation. "All parts of the statute must be given effect, and the Court should avoid a reading of the statute that renders any part meaningless." *Searcy, Denney, Scarola, Barnhart & Shipley v. State,* 209 So. 3d 1181, 1189 (Fla. 2017). To accept Owl's position, we would effectively nullify the manner of service provided for in section 48.091(3). *See id.* ("In giving effect to the text of a statute, courts may not extend, modify, or limit the statute's express terms or its reasonable or obvious implications because to do so would be an abrogation of legislative power.").

Owl's contention that KMG "effectuated substitute service" without reciting that exact wording on the verified return of service fares no better. The return details how Mr. Woods effected service under section 48.091(3). Nothing in Florida law states that affixing the "substitute service" label is legally required or that its absence from the verified return renders the return irregular. Owl's argument elevates form over substance. *See Standley*, 13 Fla. at 366 ("The [service of process] statute requires the method of service to be reported to the court by its officer, in order that the court may determine whether the party is properly summoned."); *cf. Bank of N.Y. Mellon v. Est. of Peterson*, 208 So. 3d 1218, 1222 n.2 (Fla. 2d DCA 2017) ("[A] party may not elevate form over substance to gain an improper advantage in litigation."); *Am. Hosp. of Miami, Inc. v. Nateman*, 498 So. 2d 444, 445 (Fla. 3d DCA 1986) ("We reject American's claim that this hypertechnical defect in the summons required the trial court to quash the service. The purpose of service of process is to give a defendant proper notice that it is answerable to a

11

plaintiff's claim, to advise the defendant of the nature of that claim, and to afford the defendant an opportunity to defend against it.").

The recent amendments to the service of process statutes also demonstrate that "manner of service" means how service was accomplished, not the label affixed to the return of service. For instance, the legislature added section 48.102:

> **Service by other *means*.** —If, after due diligence, a party seeking to effectuate service is unable to effectuate personal service of process on a domestic or foreign corporation; a domestic or foreign general partnership, including a limited liability partnership; a domestic or foreign limited partnership, including a limited liability limited partnership; or a domestic or foreign limited liability company, the court, upon motion and a showing of such inability, may authorize service in any other *manner* that the party seeking to effectuate service shows will be reasonably effective to give the entity on which service is sought to be effectuated actual notice of the suit. Such other *manners* of service may include service electronically by e-mail or other technology by any person authorized to serve process in accordance with this chapter, or by an attorney. The court may authorize other *methods* of service consistent with the principles of due process. In suits involving a breach of contract, the court may consider authorizing the parties to effectuate service in the *manner* provided for in the contractual notice provision of the subject contract.

Ch. 2022-190, § 8, Laws of Fla. (emphases added). The "manner of service" clearly refers to the method of delivery of the process, i.e., "by e-mail or other technology" and not to any legal label or terminology describing service. And, because section 48.102 was adopted as part of the same legislative enactment that overhauled Chapter 48, we must interpret "manner of service" as used in section 48.102 to mean the same thing that "manner of service" means in section 48.21. *See State v. Hearns*, 961 So. 2d 211, 217 (Fla. 2007) ("We have held that where the Legislature uses the exact same words or phrases in two different

12

statutes, we may assume it intended the same meaning to apply."); *Goldstein v. Acme Concrete Corp.*, 103 So. 2d 202, 204 (Fla. 1958) ("[I]n both the mechanics' lien statutes . . . and the Workmen's Compensation Act . . . the lawmakers use similar phrasing in dealing with construction projects. We may assume that in both chapters they intended certain exact words or exact phrases to mean the same thing.").

Our interpretation comports with the plain and ordinary meaning of the word "manner." *See Manner*, Merriam-Webster Dictionary Online, https://www.merriam-webster.com/dictionary/manner (defining "manner" as "a mode of procedure or way of acting") (last visited March 4, 2024). Ordinarily, "the statute's plain and ordinary meaning must control." *Westpark Preserve Homeowners Ass'n v. Pulte Home Corp.*, 365 So. 3d 391, 395 (Fla. 2d DCA 2023) (quoting *English v. State*, 191 So. 3d 448, 450 (Fla. 2016)).

The verified return of service was regular on its face, notwithstanding the omission of the words "substitute service."

## IV. Owl Failed to Carry its Burden

"The party who seeks to invoke the court's jurisdiction bears the burden of proving proper service. This burden requires the party to demonstrate that the return of service is, under section 48.21, facially valid or regular on its face." *Koster*, 160 So. 3d at 389. As we already stated, KMG cleared this hurdle. Thus, "the service of process is presumed to be valid and [Owl] . . . has the burden of overcoming that presumption by clear and convincing evidence." *See id.* (quoting *Re-Emp. Servs., Ltd. v. Nat'l Loan Acquisitions Co.*, 969 So. 2d 467, 471 (Fla. 5th DCA 2007)); *see Baker v. Stearns Bank, N.A.*, 84 So. 3d 1122, 1126 (Fla. 2d DCA 2012); *Bennett v. Christiana Bank & Tr. Co.*, 50 So. 3d 43, 45 (Fla. 3d DCA 2010) ("A process server's return which is regular on its

13

face is presumed valid absent clear and convincing evidence to the contrary.").

> [C]lear and convincing evidence requires that the evidence must be found to be credible; the facts to which the witnesses testify must be distinctly remembered; the testimony must be precise and explicit and the witnesses must be lacking in confusion as to the facts in issue. The evidence must be of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established.

*In re Davey*, 645 So. 2d 398, 404 (Fla. 1994) (alteration in original) (quoting *Slomowitz v. Walker*, 429 So. 2d 797, 800 (Fla. 4th DCA 1983)).

Unfortunately for Owl, Ms. Rojas-Quinones' equivocal testimony does not carry the day. Her uncorroborated denial of service cannot defeat service of process when the return of service is regular on its face. "To permit a defendant to impeach a summons by simply denying service would create chaos in the judicial system." *Slomowitz*, 429 So. 2d at 799; *e.g.*, *Morales L. Grp., P.A. v. Rodman*, 305 So. 3d 759, 761 (Fla. 3d DCA 2020) ("Because [the appellant] did not submit any evidence challenging the facts contained in the return of service, the [appellant] did not meet its burden."); *Telf Corp. v. Gomez*, 671 So. 2d 818, 818–19 (Fla. 3d DCA 1996) (affirming "the order of the trial court denying appellants' respective motions to quash service of process" where "[appellant] sought to attack the service of process with uncorroborated affidavits" and concluding "appellants have not sustained their high burden of demonstrating the invalidity of their service"); *Fla. Nat'l Bank v. Halphen*, 641 So. 2d 495, 496 (Fla. 3d DCA 1994) (reversing trial court's order setting aside a default judgment because "Appellee Halphen has not satisfied th[e] high burden of proof: denial by the defendant that she was personally served and testimony that she was not a resident at her mother's address, where she visited, is insufficient to impeach service").

14

For policy reasons, "the affirmative testimony of the official process server acting in the regular routine of duty without a motive to misrepresent must be preferred to the negative evidence of one claiming not to have been served, either for reasons of public policy or as a matter of probability." *Slomowitz*, 429 So. 2d at 799 (quoting *Ashe v. Spears*, 284 A.2d 622, 628 (Md. 1971)).

Surely, evidence from Ms. Febles would have been useful. *See, e.g.*, *Baker*, 84 So. 3d at 1126 ("The Bank carried its initial burden in this case because it presented as evidence at the hearing the return of service, which Mr. Baker admits is regular on its face. . . . The burden then shifted to Mr. Baker to make a prima facie showing by clear and convincing evidence that the substituted service was defective. This [Mr. Baker] did by submitting not only the two affidavits[ of both he and the individual upon whom substitute service was made], which are competent evidence on such issue, but also by testifying in person." (citations omitted)); *Williams v. Nuno*, 239 So. 3d 153, 155 (Fla. 3d DCA 2018) (affirming trial court's order denying defendant's motion to dismiss complaint for insufficient service of process where "the trial court determined that the defendant had not overcome the presumption of validity by clear and convincing evidence" as "[t]he trial court's ruling was based on a credibility determination after receiving conflicting testimony from the only two witnesses—the process server and [defendant's employee]"). Owl's failure to introduce such evidence undermines its cause.

Ms. Rojas-Quinones denied that service took place as recounted by Mr. Woods. Her bare denials do not constitute the clear and convincing evidence needed to overcome the presumption of valid service.

## **Conclusion**

15

The verified return of service was regular on its face. KMG properly served Owl under section 48.091(3). Owl failed to present clear and convincing evidence to prove otherwise. We reverse the trial court's order vacating KMG's default judgment and remand with instructions to reinstate the default judgment.

Reversed and remanded.


KELLY and VILLANTI, JJ., Concur.

_____

Opinion subject to revision prior to official publication.

16